In re Vincente Martiz TABITA a/k/a Vincente Tabita, Debtor.

Vincente Martiz TABITA a/k/a Vincente Tabita, Plaintiff,

v.

INTERNAL REVENUE SERVICE and Samuel M. Brodsky, Esquire Trustee, Defendants.

Bankruptcy No. 83–02460G.

Adv. No. 83–2041G.

United States Bankruptcy Court, E.D. Pennsylvania.

March 21, 1984.

Mitchell W. Miller, Philadelphia, Pa., for debtor/plaintiff, Vincente Martiz Tabita a/k/a Vincente Tabita.

Edward S.G. Dennis, Jr., U.S. Atty., Virginia R. Powel, Asst. U.S. Atty., Philadelphia, Pa., Gregory S. Hrebiniak, Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant, Internal Revenue Service.

Samuel M. Brodsky, Philadelphia, Pa., Trustee.

OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The issue in the case *sub judice* is whether monies received by the Internal Revenue Service ("the IRS") from the debtor's employer *within* the ninety (90) day period preceding the filing of the debtor's petition under chapter 7 of the Bankruptcy Code ("the Code"), pursuant to a levy against the debtor's wages made by the IRS *outside* the ninety day period, constitutes a voidable preference under section 547(b) of the Code. Because section 547(e)(3) of the Code provides that a transfer is not made until the debtor has acquired rights in the property transferred and since a debtor does not acquire an interest in his wages until he actually earns them, we conclude that the wages paid over to the IRS by the debtor's employer within the ninety day period preceding the debtor's filing are avoidable pursuant to section 547(b) of the Code.

The essential facts of the instant case are as follows: [1] On June 14, 1983, Vincente Martiz Tabita ("the debtor") filed a petition for relief under chapter 7 of the Code. Prior thereto, the IRS had served a writ of attachment on the debtor's employer in order to garnish the debtor's wages. It is undisputed that the IRS served the writ of attachment on the debtor's employer beyond the ninety (90) day period preceding the debtor's filing under chapter 7, but that it received the sum of $300.00, pursu-

---

1. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy

Rule 7052 (effective August 1, 1983).

ant to the wage attachment, within the aforesaid ninety day period. Consequently, on August 3, 1983, the debtor filed a complaint against the IRS, pursuant to sections 522(h) and 547(b) of the Code,[2] to recover the $300.00 in question on the basis that monies collected by the IRS within the ninety day period ($300.00) constituted a voidable preference under section 547(b) of the Code.[3]

The IRS begins by informing us that the issue of what effect a levy made beyond the ninety (90) day period prescribed by section 547(b)(4)(A) of the Code has on the wages of a debtor-employee "has been decided"—and brings only one case to our attention. In actuality, there is a wide split of authority among federal courts as to when a garnishment lien divests a debtor of ownership of his wages for purposes of section 547(b). Some courts have held that, under section 547(b) of the Code, a transfer does not occur until the debtor has acquired rights in the property transferred. Accordingly, these courts hold that the debtor does not acquire an interest in his wages until he earns them and that, therefore, the transfer occurs on the date the wages are earned. *Button v. Noe (In re Button)*, 29 B.R. 118 (Bkrtcy.E.D.Tenn. 1983); *Walden v. First Tennessee Bank (In re Walden)*, 19 B.R. 901 (Bkrtcy.E.D. Tenn.1982), *Eggleston v. Third Nat'l Bank in Nashville (In re Eggleston)*, 19 B.R. 280 (Bkrtcy.M.D.Tenn.1982); *Larson v. Olympic Finance Co. (In re Larson)*, 21 B.R. 264 (Bkrtcy.D.Utah 1982); *Evans v. CIT Financial Services (In re Evans)*, 16 B.R. 731 (Bkrtcy.N.D.Ga.1982); *Matter of Lewis*, 21 B.R. 926 (Bkrtcy.N.D.Ala., S.D.1982) (dicta); *Mayo v. United Services Automobile Ass'n (In re Mayo)*, 19 B.R. 630 (D.C. E.D.Va.1981); *Cox v. General Electric Credit Corp. (In re Cox)*, 10 B.R. 268 (Bkrtcy.D.Md.1981); *Brengle v. Wilmington Trust Co. (In re Brengle)*, 10 B.R. 360 (Bkrtcy.D.Del.1981); *Baum v. United Virginia Bank (In re Baum)*, 15 B.R. 538 (Bkrtcy.E.D.Va.1981); *Poutre v. Emery (In re Emery)*, 13 B.R. 689 (Bkrtcy.D.Vt. 1981) (dicta).

Other courts have taken the position that the service of the garnishment order on the debtor's employer creates a "continuing levy" which terminates any property right that the debtor has in his future wages. Consequently, these courts hold that the

---

**2.** Section 522(h) of the Code provides:

(h) The debtor may avoid a transfer of property of the debtor or recover a set off to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer if—

(1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and

(2) the trustee does not attempt to avoid such transfer.

11 U.S.C. § 522(h) (1979).

In the instant case, the trustee has not attempted to avoid the "transfer" of the $300.00 in question.

Section 547(b) of the Code provides:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—

(i) was an insider; and

(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b) (1979).

**3.** At trial of the instant complaint, the IRS informed us that counsel for both parties had narrowed the questions raised by the debtor's complaint to one legal issue—whether the transfer in question satisfies § 547(b)(4)(A) of the Code. Consequently, on the basis of that representation, we will address that one issue in this opinion and proceed with the understanding that the parties agree that the other four elements necessary to constitute a preference under § 547(b) of the Code are present and not in dispute.

date of transfer is the date on which the garnishment order was served on the debtor's employer or when said order was perfected under state law. *Riddervold v. Saratoga Hospital (In re Riddervold)*, 647 F.2d 342 (2nd Cir.1981); *In re Certain*, 30 B.R. 379 (Bkrtcy.D.Conn.1983); *Factors v. Blatter (Matter of Blatter*, 16 B.R. 137 (Bkrtcy.S.D.N.Y.1981) (dicta); *Moratzka v. Bill Simek Distributing (In re Brinker)*, 12 B.R. 936 (Bkrtcy.D.Minn.1981); *Woodman v. L.A. Olson Co., Inc. (Matter of Woodman)*, 8 B.R. 686 (Bkrtcy.W.D.Wis. 1981).

As previously mentioned, the IRS relies entirely on *Riddervold, supra,* wherein the United States Court of Appeal for the Second Circuit held:

▪ In principle it does not appear to us that the [employer's] paying $227 to the [creditor] during the 90-day period now provided by § 547(b)(4)(A) [of the Code] constituted a 'transfer of property of the debtor.' This is not because [the debtor] took no action to cause the payments to be made, since 'transfer' is defined to include an involuntary transfer. It is rather because after the sheriff has taken the step described [by state law], *the debtor has no property or interest in property subject to the levy which can be transferred.* Service of the income execution on the employer in effect works a novation whereby the employer owes 10% of the employee's salary not to the employee but to the sheriff for the benefit of the judgment creditor. This view is substantiated by the provision in [the state law] that if the employer fails to pay the sheriff, the judgment creditor may sue the employer to recover accrued installments.

It is true that the employer comes under no liability to pay the sheriff until the wages are earned. Indeed [the state law] expressly provides for this eventuality of [sic] stating that if 'employment is terminated by resignation or dismissal ..., the levy shall thereafter be ineffective.' *But this does not require us to hold that the portion of the salary subject to the income execution vests in the* *employee for a fleeting second after it has been earned, when in fact the employer becomes bound at that very time to pay it to the sheriff* (emphasis added).

647 F.2d at 346.

However, neither the Second Circuit nor any of the other courts expressing similar results (previously cited above) considered the import of section 547(e)(3) of the Code, (which qualifies section 547(e)(2) of the Code) in the course of their opinions. Both sections deal with the issue of when a transfer occurs for purposes of section 547(b) of the Code:

(2) For the purposes of this section, *except as provided in paragraph (3) of this subsection,* a transfer is made—

(A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time;

(B) at the time such transfer is perfected, if such transfer is perfected after such 10 days; or

(C) immediately before the date of the filing of the petition, if such transfer is not perfected at the later of—

(i) the commencement of the case; and

(ii) 10 days after such transfer takes effect between the transferor and the transferee.

(3) For the purposes of this section, a transfer is not made until the debtor has acquired rights in the property transferred (emphasis added).

11 U.S.C. §§ 547(e)(2); (e)(3) (1979).

Section 547(e)(3) establishes that a transfer cannot occur before the debtor has acquired rights in the property transferred. This additional limitation represents a radical departure from pre-Code law in that the legislative history of section 547(e)(3) expressly reveals that said section was codified to overrule such cases as *Grain Merchants of Indiana, Inc. v. Union Bank and Savings Co.*, 408 F.2d 209 (7th Cir.), *cert. denied*, 396 U.S. 827, 90 S.Ct. 75, 24 L.Ed.2d 78 (1969) and *DuBay v. Williams*, 417 F.2d 1277 (9th Cir.1969). H.R.Rep. No.

95–595, 95th Cong., 1st Sess. 374–75, *reprinted in* [1978] U.S.Code Cong. and Ad. News 5963, 6330–6331; Sen.Rep. No. 95–989, 95th Cong., 1st Sess. 88, *reprinted in* [1978] U.S.Code Cong. and Ad.News 5787, 5873–5875. In *Grain Merchants*, for example, the bank-creditor had a security interest in the debtor's accounts receivable. At issue in the case were certain accounts that were collected by the debtor and deposited by the debtor in its account with the bank-creditor within the preference period. The United States Court of Appeals for the Seventh Circuit held that the transfer to the bank-creditor occurred when the security agreement between the debtor and the bank-creditor was executed and filed, and not, as would be the case under section 547(e)(3) of the Code, when the accounts were paid to the debtor by its customers— i.e., when the debtor "acquired rights in the property transferred." *See* 4 Collier on Bankruptcy, ¶ 547.45 at 547–135 (15th ed. 1983). Such a holding, however, is now expressly contrary to the provisions of section 547(e)(3) of the Code.

In *In re Eggleston, supra,* the court reasoned that:

> Nothing in the legislative history or the statutory language itself, however, implies that the provisions of § 547(e)(3) *are limited to transfers involving security interests in after-acquired collateral.* The unambiguous and clear language of the statute requires that the provisions of § 547(e)(3) apply to all transfers which are attached as preferential, including a judicial lien obtained by a garnishment proceeding. *For this reason, the transfer of the debtor's wages to the creditor in the present case could not occur until the debtor became entitled to his wages. The debtor simply has no right to wages which have not yet been earned* (citations omitted) (emphasis added).

19 B.R. at 284.

In contrast, to the rationale expressed by the *Eggleston* court, the court in *Beck v.*

*Int'l Harvester Credit Corp. (Matter of E.P. Hayes, Inc.),* 29 B.R. 907, 911 (Bkrtcy. D.Conn.1983), held that "no basis exists for construing § 547(e)(3) as affecting settled law beyond its effect or after-acquired property clauses." That court, faced with the question of whether payments received by a creditor within the ninety day preference period, but made pursuant to an assignment of payments executed by the debtor prior to the ninety day preference period, were avoidable under section 547(b) of the Code, held that section 547(e)(3) was applicable only to security interests involving after-acquired property clauses and that, therefore, the assignment of the right to payments was complete when it was executed and that the subsequent payments made pursuant to said assignment did not constitute transfers. A contrary result was reached in *Diversified World Investments v. Omni Int'l., Ltd. (In re Diversified World Investments, Ltd.),* 12 B.R. 517 (Bkrtcy.S.D.Tex.1981), wherein the court held that section 547(e)(3) also overruled those pre-Code decisions holding that an assignment of the right to payments is complete when made and that subsequent payments made pursuant to the assignment are not transfers.[4] In *Diversified,* the debtor made an assignment of rents to a creditor beyond the ninety day preference period but sued, after the filing of its petition, to recover those rental payments made to the assignee-creditor within the preference period. In denying the creditor's motion to dismiss the debtor's complaint, the court reasoned as follows:

> Although not specifically considered by the legislative history, the court believes that § 547(e)(3) was intended to bring payments made pursuant to an assignment within the term 'transfer'. Under § 101(40) the term transfer was intended to be 'as broad as possible', H.R.Rep. No. 95–595, 95th Cong., 1st Sess. (1977) 314; S.Rep. No. 95–989, 95th Cong., 2d Sess.

---

**4.** *See Selby v. Ford Motor Co.,* 405 F.Supp. 164 (E.D.Mich.1975), *aff'd,* 590 F.2d 642 (6th Cir. 1979); *Malone v. Bolstein,* 151 F.Supp. 544 (N.D.

N.Y.1956), *aff'd,* 244 F.2d 954 (2nd Cir.1957); *Rockmore v. Lehman,* 128 F.2d 564, *rev'd on rehearing,* 129 F.2d 892 (2nd Cir.1942).

(1978) 27, and § 101(40) clearly includes indirect payments. Furthermore, when § 547(e)(3) is read together with § 101(40) it appears to the court that the rental payments from Aramco [the lessee] to Omni [assignee-creditor] were indirect transfers made for the benefit of Diversified [the debtor-assignor] as the rental payments were intended to reduce Diversified's indebtedness to Omni. Thus, while indirect, the rental payments were made when Diversified obtained a right to receive them and not at the time of the assignment. Omni occupies a position analogous to that of the secured creditor in *Grain Merchants, In re Cox,* 10 B.R. 268, 271 (Bkrtcy.D.Md.1981), with the difference being that the transfer is indirect rather than direct.

12 B.R. at 519.

Such reasoning, however, by the Bankruptcy Court of the Southern District of Texas was criticized by *Collier on Bankruptcy,* which stated:

> Under the court's reasoning, section 547(e)(3) would provide the trustee with a potent weapon for avoiding legitimate security arrangements, *a result not intended by Congress.* In fact, the debtor has assigned its interest in the rentals long before bankruptcy and *had nothing to transfer* during the 90-day preference period (emphasis added).

4 Collier on Bankruptcy, ¶ 547.45 at 547–134 (15th ed. 1983). Based on all the above, and contrary to the reasoning expressed by the Second Circuit in *Riddervold,* we find that section 547(e)(3) of the Code "requires" us to hold that the portion of the debtor's salary subject to the wage attachment vests in the debtor-employee when he has performed the services for which he is entitled to be paid. Until that time, the debtor has not "acquired rights" in his wages. Consequently, since, as a matter of federal bankruptcy law, the debtor acquired rights in his wages when he earned them, those wages collected by the IRS within the preference period are avoidable under section 547(b) of the Code.

We are fully cognizant that our interpretation of section 547(e)(3) may have far-reaching ramifications. However, we conclude that had Congress intended to restrict the reach of that section to only those security interests involving after-acquired property clauses, it would have done so in the statutory language itself. Accordingly, we will grant the debtor's complaint.