**In re Steven Douglas KRUMPE, Debtor.**

**Roger SCHLOSSBERG, Trustee, Plaintiff,**

v.

**FINANCE AMERICA CORPORATION, Defendant.**

Bankruptcy No. 83–A–0944.
Adv. No. 85–0206A.

United States Bankruptcy Court, D. Maryland, at Rockville.

April 24, 1986.

Roger Schlossberg, Hagerstown, Md., Trustee of the Chapter 7 estate.

James Hirschman, Landover, Md., for defendant, Finance America Corp.

## MEMORANDUM OF DECISION

PAUL MANNES, Bankruptcy Judge.

This matter came before the court for trial upon the complaint of Roger Schlossberg, trustee, seeking recovery of an alleged preference. The operative facts are not in dispute. Between March 18, 1983, and June 16, 1983, and within 90 days before the filing of Mr. Krumpe's Chapter 7 petition, property of the debtor in the amount of $1,484.77 was transferred to the defendant, Finance America Corporation (Finance America), pursuant to a wage attachment served upon the debtor's employer. Service of the wage attachment was made pursuant to Md.Com.Law Code Ann. §§ 15–601 *et seq.* (1983 Repl.Vol.). Under the operative provision, § 15–602(a), the Maryland legislature has provided:

> § 15–602. *Continuing lien; application and waiver of limitations in § 15–601.*
>
> (a) *Attachment constitutes continuing lien.*—When an attachment is levied

against the wages of a judgment debtor, it shall constitute a lien on all attachable wages that are payable at the time the attachment is served or which become payable until the judgment, interest, and costs, as specified in the attachment, are satisfied.

The parties agree that at the time the attachments were levied the debtor was insolvent. His Chapter 7 petition, filed on June 16, 1983, showed nearly $20,000 in debts and $6,000 in assets. The case was a "no asset" case in that at the time it was filed the Clerk determined that the schedules reflected no likelihood of any distribution to unsecured creditors. Therefore, the first meeting notice instructed the creditor body not to file claims.[1]

Because this case was filed in 1983, the rule of decision is governed by § 547(b) of the Bankruptcy Reform Act of 1978 (now amended), which provided:

> § 547 *Preferences*
>
> (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—
>
> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3) made while the debtor was insolvent;
>
> (4) made—
>
> (A) on or within 90 days before the date of the filing of the petition; or
>
> (B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—
>
> (i) was an insider; and
>
> (ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer;
>
> (5) that enables such creditor to receive more than such creditor would receive if—

---

1. Had assets been discovered, such creditors would have been given an opportunity to file claims.

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provision of this title.

Also relevant is § 547(e)(3) of the 1978 Code, which provided:

(e)(3) For the purposes of this section, a transfer is not made until the debtor has acquired rights in the property transferred.

Upon receipt of the garnishment payments by debtor's employer, Finance America paid a portion thereof to its lawyer as a contingency fee. The court finds that whatever the defendant did with the money following receipt is of no importance in the present case. The exception to the charge of preference relied upon by the defendant/creditor, § 547(c)(4), deals only with new value given by the creditor to or for the benefit of the debtor. No such new value was given to debtor by the payment to defendant's attorney for his services. Defendant also places great emphasis upon *In Re TMIC Industrial Cleaning Co.*, 19 BR 397 (BC W.D.Mo.1982). That case is inappropriate in that it involved not a wage garnishment but rather an attachment levied upon certain creditors of the corporate debtor on the basis of accounts receivable which were owed to the debtor at the time of the attachment.

The court finds that the Maryland garnishment lien attached to the particular wages of the debtor for a given time, when and if such "became payable" as specified under Maryland law. Until the wages were earned, there was nothing in being for the attachment lien to reach. Furthermore, the attachment would lapse should the debtor resign or be dismissed from employment. Maryland Com.Law Code Ann. § 15–604 (1983 Repl.Vol.) provides:

§ 15–604. *Resignation or dismissal of employee.*

If a judgment debtor resigns or is dismissed from his employment while an attachment upon his wages is wholly or partly unsatisfied, the attachment shall lapse and no further deduction may be made unless the judgment debtor is reinstated or reemployed within 90 days of the resignation or dismissal.

Furthermore, Maryland law prohibits the judgment creditor from applying the attached funds to the collection of attorney's fees as was done in this case. Md. Com.Law Code Ann. § 15–605(c) (1983 Repl.Vol.) provides:

§ 15–605. *Duties of judgment creditor.*

(c) *Application of payments received by judgment creditor.*—All payments received by a judgment creditor shall be credited first against the accrued interest on the unpaid balance of the judgment, if any, second upon the principal amount of the judgment, and third upon those attorney's fees and costs actually assessed in the cause.

When this court was first presented with the issue at bar in the case of *In re Cox*, 10 B.R. 268 (BC Md.1981), this court distinguished the earlier Fourth Circuit case of *Walutes v. Baltimore Rigging Co.*, 390 F.2d 350 (4th Cir.1968), a case under § 60(a)(1) of the repealed Bankruptcy Act. Speaking for this court in *Cox*, Judge Lebowitz stated:

Section 547(e)(3) of the Code provides that "a *transfer* is not made until the debtor has acquired rights in the property transferred." 11 U.S.C. § 547(e)(3) (Supp. III 1979) (emphasis added). This limitation is a significant departure from the law as to preferences under the Act. 4 Collier on Bankruptcy ¶ 547.45, at 547–135 (15th ed. 1980). Section 547(e)(3) is similar to the Uniform Commercial Code provision that a security interest cannot attach until "the debtor has rights in the collateral." Md.Com.Law Code Ann. § 9–204(1) (1975). *Cf.* Md.Com.Law Code Ann. § 9–203(1)(c) (Supp.1980) (effective January 1, 1981). Moreover, § 547(e)(3) was intended by Congress to overrule expressly cases such as *Grain Merchants of Indiana, Inc. v. Union Bank & Savings Co.*, 408 F.2d 209 (7th Cir.), *cert. denied*, 396 U.S. 827, 90 S.Ct. 75, 24

L.Ed.2d 78 (1969). H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 374–75 (1977), U.S. Code Cong. & Admin.News 1978, p. 5787.

\* \* \* \* \* \*

The current Maryland wage garnishment statute places an attaching judgment creditor in a position analogous to *Grain Merchants.* A writ of garnishment may well be a duly perfected lien on wages yet to be earned such that a creditor on a simple contract cannot acquire a judicial lien that is superior to the rights of the judgment creditor. *Cf.* 11 U.S.C. § 547(e)(1)(B) (Supp. III 1979). Nonetheless, the avoidance powers under § 547(b) extend to the avoidance of transfers rather than perfection of liens. Inasmuch as § 547(e)(3) establishes that a transfer does not occur until the debtor has rights in the collateral, the transfer of wages garnished pursuant to a writ of garnishment cannot occur until the judgment debtor has earned the wages garnished. Thus, a payment on a garnishment attributable to wages earned by the debtor within ninety days of the filing of a bankruptcy petition is a preferential transfer to the judgment creditor. If as in this case the garnished wages have been exempted by the debtor, and the trustee does not act to avoid the transfer under § 547, the debtor may properly bring such an action under § 522(h).

10 B.R. at 271–72.[2] The ruling in *Cox* was reexamined by Chief Judge MacKenzie in the case of *In re Mayo,* 19 B.R. 630, 632–33 (E.D.Va.1981). Chief Judge MacKenzie reviewed the broadened definition of the word "transfer" adopted in the 1978 Bankruptcy Code. The court concluded that "the wages of the plaintiff *which were earned* and subjected to the garnishment process within 90 days of the date of filing of the petition in bankruptcy were preferentially transferred." 19 BR at 633 (em-

phasis added). Two other cases review this problem in exquisite detail, all noting that the property in question does not come into existence until the time that the debtor earns the wages. *See In re Perry,* 48 BR 591 (BC M.D.Tenn.1985); *In re Tabita,* 38 BR 511 (BC E.D.Pa.1984). *Perry* and *Tabita* also explain the impact of §547(e)(3) in view of the legislative history.

The court has considered three Court of Appeals opinions, *Askin Marine Co. v. Conner,* 733 F.2d 1560, 1561 (11th Cir. 1984); *In re Coppie,* 728 F.2d 951, 952 (7th Cir.1984) *cert. denied sub nom., Gouveia v. Hammond Clinic,* —— U.S. ——, 105 S.Ct. 777, 83 L.Ed.2d 772 (1985); and *Riddervold v. Saratoga Hospital,* 647 F.2d 342, 344 (2d Cir.1981). The court will briefly summarize why those cases are not persuasive or controlling with respect to the case at bar. In passing, the court notes that the Court of Appeals cases have been discussed at length in *Perry* and the court will not plagiarize what was patiently pointed out there.

First, *Riddervold* never discusses the effect of § 547(e)(3). Indeed, much of the case is taken up with a discussion of the earlier Bankruptcy Act and the decision of the great Judge Learned Hand in the case of *In re Sims,* 176 F. 645 (S.D.N.Y.1910). Second, *Coppie* turned on that court's finding that under Indiana law the debtors retain no interest in ten percent of their future wages following the entry of garnishment orders, and that once a garnishment order is entered the debtor's right to ten percent of future wages is irrevocably transferred. By contrast, the Maryland Commercial Law Code Annotated sets out in § 15-601.1 an exemption from wage attachment. It could well be that a debtor would have no wages subject to attachment, all being exempt. Third, *Coppie* gives a curious definition of a transfer

---

**2.** The court notes that the same effect as that of § 547(e)(3) is accomplished under Maryland law. While Md.Com.Law Code Ann. § 15-602(a) provides that a wage attachment constitutes a lien which continues to wages which "become payable," the Maryland Court of Appeals has made clear that "wages not actually due when the attachment is laid are not subject to attachment, primarily because the employee's right to sue the garnishee has not matured." *United States v. Williams,* 279 Md. 673, 370 A.2d 1134, 1137 (1977) (*citing, inter alia, Bendix Radio Corp. v. Hoy,* 207 Md. 225, 114 A.2d 45 (1955)).

taking place before the wages came into existence. The court sees no logic in a view that, contrary to § 547(e)(3), a debtor can transfer something that is not yet his to pass on. Fourth, *Conner*, like *Riddervold*, ignores § 547(e)(3). It is true that further attachments upon the employer/garnishee in Maryland, as in *Conner*, are inferior to the original attachment, Md. Com.Law Code Ann. § 15–603(b). But the *Conner* court also says that "under Section 547 the transfer generally is made when the transfer is 'perfected,'" 733 F.2d at 1562, which is not precisely the case in view of § 547(e)(3). Had the court then considered the fact that under § 547(e)(3) "a transfer is not made until the debtor has acquired rights in the property transferred," it would not have reached the decision that it did.

For all of the above reasons, as spelled out in detail in the *Mayo, Perry,* and *Tabita* cases, the court will enter judgment in favor of the plaintiff.