In re Teddy C. BALLARD, Sr., and Evelyn M. Ballard, Debtors.

Teddy C. BALLARD, Sr., and Evelyn M. Ballard, Plaintiffs,

v.

STATE of Wisconsin, United States of America, Department of Treasury, State of Illinois, Defendants.

Bankruptcy No. WU7–90–00826. Adv. No. A90–0140–7.

United States Bankruptcy Court, W.D. Wisconsin.

May 9, 1991.

Terrence J. Byrne, Byrne Law Office, Wausau, Wis., for plaintiffs.

Mary Bielefeld, Trial Atty., Tax Div., U.S. Department of Justice, Washington, D.C., for the U.S.

## MEMORANDUM OPINION, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

THOMAS S. UTSCHIG, Bankruptcy Judge.

This matter comes before the Court on a motion to dismiss filed by the defendant United States of America, Department of Treasury—Internal Revenue Service. The grounds for this motion are lack of jurisdiction and failure to state a claim upon which relief can be granted.

The motion to dismiss pertains to an adversary proceeding filed by the debtors, Teddy C. and Evelyn M. Ballard, against the State of Wisconsin; the United States of America, Department of Treasury—Internal Revenue Service (hereinafter USA–IRS); and the State of Illinois. In the adversary proceeding, the debtors seek to have their 1985 income taxes declared dischargeable and to have an IRS levy of wages totalling $1,283.29 declared void as a preference. The actions against the State of Illinois and the State of Wisconsin were dismissed pursuant to stipulations between the parties dated September 11, 1990, and September 12, 1990, respectively. The remaining defendant, USA–IRS, has admitted that the debtors' 1985 income taxes are dischargeable. The debtors in this action are represented by Terrence J. Byrne, and the defendant by Mary Bielefeld.

Two issues are presented by the defendant's motion. First, whether the defendant USA–IRS has waived its sovereign immunity in this matter so as to be subject to the jurisdiction of this Court. Second, whether the amount seized by the USA–IRS from the debtors pursuant to a wage levy constituted "a transfer by the debtor of an interest in property" for purposes of 11 U.S.C. § 547 so as to present a colorable preference claim to overcome defendant's motion to dismiss for failure to state a claim on which relief can be granted.

The relevant facts are not in dispute and need be only briefly reviewed here. The debtors filed for relief under Chapter 7 of the Bankruptcy Code on March 26, 1990. On or about December 18, 1989, the defendant USA–IRS served a notice of levy on wages pursuant to 26 U.S.C. § 6331 on plaintiff's employer, Marmet Corporation. Within the 90 days prior to the debtors' bankruptcy filing, wages totalling $1,283.29 were levied against and were paid over to the USA–IRS. It is this amount which the debtors allege to be a voidable preference pursuant to 11 U.S.C. § 547.

In support of its motion to dismiss for lack of jurisdiction, the defendant asserts that the United States has not waived its sovereign immunity in this case. The defendant expounds at length in support of this assertion, but when its argument is reduced to the essentials, the USA–IRS principally relies on a recent Supreme Court case, *Hoffman v. Conn. Dept. of Income Maintenance*, 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989) and its progeny. The defendant cites *Hoffman* for the proposition that 11 U.S.C. § 106(c) does not constitute a waiver of sovereign immunity by a state in preference actions, among others. *Hoffman* dealt in part with an action by a Chapter 7 trustee to recover as a preference an amount paid to the defendant Connecticut Department of Revenue Services for state taxes, interest, and penalties. The Supreme Court affirmed the Second Circuit's denial of the trustee's preference claim by concluding that 11 U.S.C. § 106(c) does not authorize monetary recovery from the states. 109 S.Ct. at 2823. The Court states "Under this construction of 106(c), a State that files no proof of claim would be bound, like other creditors, by discharge of debts in bankruptcy, including unpaid taxes, ... but would not be subjected to monetary recovery." *Id.*

The defendant also cites *Hoffman* in rebuttal of a Seventh Circuit case heavily relied upon by the plaintiff, *McVey Trucking, Inc. v. Secretary of the State of Ill. (In re McVey Trucking, Inc.)*, 812 F.2d 311 (7th Cir.1987), *cert. denied*, 484 U.S. 895, 108 S.Ct. 227, 98 L.Ed.2d 186 (1987). *McVey* involved a debtor's preference action to recover money transferred to the Illinois Secretary of State for prospective highway-use and flat-weight taxes. The Bankruptcy Court and the District Court both held that they lacked jurisdiction over the Secretary under the Eleventh Amendment. 812 F.2d at 313. The Seventh Circuit Court of Appeals reversed and remanded after concluding in a lengthy opinion that Congress intended through 11 U.S.C. §§ 106(c) and 547(b) to create a cause of action for money damages enforceable against a state in federal court. *Id.* at 327. The defendant asserts that the Supreme Court's *Hoffman* decision effectively overrules this holding of the Seventh Circuit in *McVey*.

For numerous reasons, this Court finds the defendant's reliance on the *Hoffman* decision unconvincing when applied to the facts of this case. First, *Hoffman* is a plurality decision which at most holds that the states cannot be sued pursuant to 11 U.S.C. § 106(c) for money damages. This holding was reached by a five-Justice combination involving two theories, one finding that Congress lacks authority to waive the sovereign immunity of states, and the other holding that the Bankruptcy Code's waiver provision was not intended to waive the sovereign immunity of states. Four Justices dissented, concluding that Congress intended § 106(c) to abrogate the states' Eleventh Amendment immunity against money judgments. *Hoffman*, 109 S.Ct. at 2824–25 (Marshall J., Brennan J., Blackmun J., and Stevens J., dissenting). Given the fact that *Hoffman* was decided by a plurality based on two separate theories, therefore, its precedential value is quite limited.

Second, contrary to defendant's assertion in its reply brief, the *Hoffman* plurality relied heavily on the strictures of the Eleventh Amendment in holding that the states' immunity under that provision is not abrogated by 11 U.S.C. § 106(c). The case before us involves the federal government, not a state, and thus Eleventh Amendment concerns are inapplicable here. The Sixth Circuit Court of Appeals, in an action to avoid a transfer to the IRS, reached this same conclusion as to the precedential value of *Hoffman*, stating "[t]he case cannot be used to support a claim that Congress has not waived the governmental immunity of the United States, absent the strictures of the Eleventh Amendment." *See In re Nordic Village, Inc.*, 915 F.2d 1049, 1054 (6th Cir.1990), *reh'g denied*, No. 89–3656, 1990 WL 143021 (6th Cir. Jan. 23, 1991) (LEXIS, Bkrtcy library, Cases file).

Third, dicta in the *Hoffman* decision supports the fact that it is inapplicable to the federal government. Examining 11 U.S.C. § 106(c), the Supreme Court states that "[t]he language in 106(c) waives the sovereign immunity of the Federal Government so that the Federal Government is bound by determinations of issues by the bankruptcy courts even when it did not appear and subject itself to the jurisdiction of such courts." *Hoffman*, 109 S.Ct. at 2823. Although dicta, this statement is sufficient to rebut the defendant's assertion that the *Hoffman* case should be expanded to apply to cases involving the United States as well. *See Bryant v. United States (In re Bryant)*, 116 B.R. 272, 276 (Bankr.D.Kan. 1990); *Grant v. United States (In re Simmons)*, 110 B.R. 72, 73 (Bankr.M.D.Fla. 1990); *In re Price*, 103 B.R. 989, 994 (Bankr.N.D.Ill.1989), *aff'd*, 130 B.R. 259 (N.D.Ill.1991). In addition, the legislative history of 11 U.S.C. § 547(b)(2), part of the preference provision at issue in this case, explicitly states that preference actions can be maintained against the government. That legislative history states "As provided, section 106(c) of the House amendment overrules contrary language in the House report with the result that the Government is subject to avoidance of preferential transfers." 124 Cong.Rec. H11097 (daily ed. Sept. 28, 1978) (statement of Rep. Edwards), *reprinted in* 3 *Collier on Bankruptcy* at IX–103 (Appendix Vol., 15th ed. 1990); 124 Cong.Rec. S17414 (daily ed. Oct. 6, 1978) (statement of Sen. DeConcini), *reprinted in* 3 *Collier on Bankruptcy* at X–29 (Appendix Vol., 15th ed. 1990). *See Hoffman*, 109 S.Ct. at 2827 n. 6 (Marshall, J., Brennan, J., Blackmun, J., and Stevens, J., dissenting). Justice Kennedy of the Sixth Circuit Court of Appeals, in his dissent in the aforementioned *Nordic Village* case, notes that "[t]his statement contains the strongest evidence that Congress intended to waive its sovereign immunity to suit." 915 F.2d at 1061. Justice Kennedy minimizes the persuasive effect of this statement, however, by noting that "[this statement] may only authorize bankruptcy courts to make the avoidance determination, not order recovery from the government." *Id.* This Court is not persuaded by this reasoning. The question at issue here is a threshold one—whether the federal government has waived its sovereign immunity so as to be subject to the jurisdiction of this Court. In order for this Bankruptcy Court to make an avoidance deter-

mination as to an allegedly preferential transfer to the USA–IRS, it must first have jurisdiction over the USA–IRS as to this matter. If this Court has jurisdiction to make an avoidance determination in a case where the federal government is a defendant, then it has jurisdiction to order the recovery of the avoided property as well. The emphasis here is on *jurisdiction*—the threshold issue currently before this Court. The aforementioned legislative history states clearly and unequivocally that the government is subject to avoidance of preferential transfers. It follows, then, that this Court has jurisdiction to determine whether recovery of the amounts transferred should be ordered as well. "It is well settled that when the Federal Government waives its sovereign immunity, the scope of that waiver is construed liberally to effect its remedial purposes." *Hoffman v. Conn. Dept. of Income Maintenance*, 492 U.S. 96, 109 S.Ct. 2818, 2829, 106 L.Ed.2d 76 (1989) (Stevens, J., Blackmun, J., dissenting) *citing with approval Block v. Neal*, 460 U.S. 289, 298, 103 S.Ct. 1089, 1094, 75 L.Ed.2d 67 (1983); *United States v. Yellow Cab Co.*, 340 U.S. 543, 554–55, 71 S.Ct. 399, 406–07, 95 L.Ed. 523 (1951); *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 709, 69 S.Ct. 1457, 1470, 93 L.Ed. 1628 (1949) (Frankfurter, J., dissenting); *Great Northern Life Ins. Co. v. Read*, 322 U.S. 47, 59, 64 S.Ct. 873, 879, 88 L.Ed. 1121 (1944) (Frankfurter, J., dissenting). *See also, In re Price*, 103 B.R. 989, 995 (Bankr. N.D.Ill.1989), *aff'd*, 130 B.R. 259 (N.D.Ill. 1991). The right to make an avoidance determination would be meaningless without the concurrent right to order, if appropriate, the recovery of that which was transferred. Whether an order to recover transferred amounts from the USA–IRS is appropriate in this case remains to be seen. As noted in the *Nordic Village* dissent, § 550 of the Bankruptcy Code limits, in certaances, the right of the trustee to recover avoided transfers. 915 F.2d at 1061. Whether these limits apply in the present case will need to be addressed by the parties. For present purposes, however, this Court finds the aforementioned statement of Representative Edwards and Senator DeConcini in the legislative history of 11 U.S.C. § 547 to be persuasive evidence that Congress, in 11 U.S.C. § 106(c), intended to waive the sovereign immunity of the federal government to claims such as the one at issue here. *See Hoffman v. Conn. Dept. of Income Maintenance*, 492 U.S. 96, 109 S.Ct. 2818, 2829, 106 L.Ed.2d 76 (1989) (Stevens, J., Blackmun, J., dissenting). Justice Kennedy's bifurcation of the right to avoid a preferential transfer from the right to recover from the transferee in his *Nordic Village* dissent is therefore unpersuasive in deciding the threshold jurisdictional issue currently before the Court.

Fourth, defendant's assertion that three of the four Circuit Courts of Appeals which have addressed this issue have concluded that *Hoffman* is also controlling precedent as to the United States is equally unconvincing. One of the decisions cited by the defendant applies only to state defendants and does not advocate an expansion of *Hoffman* to the federal government as a defendant. *See Tew v. Arizona State Retirement System*, 873 F.2d 1400 (11th Cir. 1989). The other two Circuit Courts of Appeals have indeed interpreted *Hoffman* as applying to the United States but they have done so by merely stating the conclusion in very brief opinions without any justification for the expansion of *Hoffman* whatsoever. *See Pearson v. United States* (*In re Pearson*), 917 F.2d 1215 (9th Cir. 1990); *Small Business Administration v. Rinehart*, 887 F.2d 165 (8th Cir.1989). The one Court of Appeals that ruled against the expansion of *Hoffman* to suits involving the United States did so in a well reasoned decision with ample support for its findings. *See In re Nordic Village, Inc.*, 915 F.2d 1049 (6th Cir.1990), *reh'g denied*, No. 89–3656 (6th Cir. Jan. 23, 1991) (LEXIS, Bkrtcy library, Cases file). This Court adopts the reasoning of the Sixth Circuit in *Nordic Village* in declining to expand the *Hoffman* decision to suits involving the United States.

Finally, the Court notes that several other courts have limited the *Hoffman* holding to cases where a state is a defendant and have expressly refused to apply it to cases

where the United States is a defendant. *See, e.g., Bryant v. United States (In re Bryant )*, 116 B.R. 272 (Bankr.D.Kan.1990); *Grant v. United States (In re Simmons)*, 110 B.R. 72 (Bankr.M.D.Fla.1990); *In re Price*, 103 B.R. 989 (Bankr.N.D.Ill.1989), *aff'd*, 130 B.R. 259 (N.D.Ill.1991).

For the aforementioned reasons, therefore, the Court declines to apply the *Hoffman* decision to the case before it and holds that 11 U.S.C. § 106(c), as interpreted in *In re Nordic Village, Inc.*, 915 F.2d 1049 (6th Cir.1990), *reh'g denied*, No. 89–3656 (6th Cir. Jan. 23, 1991) (LEXIS, Bkrtcy library, Cases file) prevents the defendant USA–IRS from asserting the defense of sovereign immunity. Defendant's motion to dismiss for lack of jurisdiction is accordingly denied.

Defendant's second ground for its motion to dismiss is failure to state a claim upon which relief can be granted. It is unclear from defendant's memorandum in support of its motion to dismiss which arguments it marshals in support of this second ground. It is presumed that the assertion that the relevant funds seized in this case were not property of the estate is offered in support of this second ground for dismissal.

Although here too defendant argues at length in support of this assertion, its arguments can be reduced to the proposition that the IRS' levy on the debtor's wages effected an immediate transfer of those wages to the defendant. As of the date of levy then, the debtor allegedly had no interest whatsoever in the future wages subject to the levy. Since the date of the levy was outside of the ninety-day preference period, the argument continues, the wages which were seized were not a part of the debtor's estate during the preference period and they therefore could not have been a preferential transfer. The defendant notes that its levy on wages is a continuing levy pursuant to 26 U.S.C. § 6331(e) and notes that the fact that the wages were to be turned over periodically (every payday) to the IRS did not prevent the IRS from obtaining full ownership of the funds at the time of the transfer. Defendant cites two

Supreme Court cases, *Phelps v. United States*, 421 U.S. 330, 95 S.Ct. 1728, 44 L.Ed.2d 201 (1975) and *United States v. National Bank of Commerce*, 472 U.S. 713, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985), in support of this assertion.

Numerous courts have examined the issue of whether a debtor retains any interest in cash, bank accounts, or accounts receivable once they have been levied upon by the IRS. The defendant, while arguing that an IRS levy completely divests the debtor of any interest in the funds, correctly notes that many courts have held differently—that the debtor does indeed retain an interest in the funds post-levy. It is clear that there exists a divergence of opinion as to this question among courts throughout the country. Decisions holding that the debtor retains no post-levy interest in the funds include *Cross Electric Company v. United States*, 664 F.2d 1218 (4th Cir.1981); *Rose v. Commercial Nat'l Bank (In re Rose)*, 112 B.R. 12 (Bankr.E.D.Tex. 1989); *Altman v. Commissioner*, 83 B.R. 35 (D.Haw.1988); *Professional Technical Services, Inc. v. IRS (In re Professional Technical Services, Inc.)*, 71 B.R. 946 (Bankr.E.D.Mo.1987), *rev'd on other grounds*, 94 B.R. 578 (E.D.Mo.1988). Decisions holding that the debtor does retain an interest in post-levy funds sufficient to warrant return of those funds into the bankruptcy estate (through an action for preference, turnover, etc.) include *In re AIC Industries, Inc.*, 83 B.R. 774 (Bankr. D.Colo.1988); *In re Cleveland Graphic Reproduction, Inc.*, 78 B.R. 819 (Bankr. N.D.Ohio 1987); *Tabita v. IRS (In re Tabita)*, 38 B.R. 511 (Bankr.E.D.Pa.1984); *Davis v. IRS (In re Davis)*, 35 B.R. 795 (Bankr.W.D.Wash.1983); *Dunne Trucking Co. v. IRS (In re Dunne Trucking Co.)*, 32 B.R. 182 (Bankr.N.D.Iowa 1983); *Bristol Convalescent Home, Inc. v. IRS (In re Bristol Convalescent Home, Inc.)*, 12 B.R. 448 (Bankr.D.Conn.1981).

This Court has reviewed the wealth of case law on this issue and notes initially that a majority of bankruptcy courts throughout the country still hold that wage garnishments occurring during the prefer-

ence period constitute an avoidable preference. *See* 4 *Collier on Bankruptcy,* para. 547.16 at 77 (15th ed. 1990) (citations omitted). The Court further notes that three Circuit Courts of Appeal have addressed the issue and, on differing grounds, found that the garnishments at issue in each case did not constitute preferences. *See Askin Marine Co. v. Conner* (*In re Conner*), 733 F.2d 1560 (11th Cir.1984); *In re Coppie,* 728 F.2d 951 (7th Cir.1984), *cert. denied sub nom. Gouveia v. Hammond Clinic,* 469 U.S. 1105, 105 S.Ct. 777, 83 L.Ed.2d 772 (1985); *Riddervold v. Saratoga Hosp.* (*In re Riddervold*), 647 F.2d 342 (2nd Cir. 1981). Because this Court is bound by the Seventh Circuit precedent, the *Coppie* decision and its potential applicability to the facts of the present case need to be examined.

In *Coppie,* a bankruptcy trustee brought a preference action seeking to recover wages of the debtor which were garnished within 90 days of the bankruptcy filing pursuant to a garnishment order issued more than 90 days before the filing. After noting the great divergence of opinion on the issue, the *Coppie* court relied on Indiana law and held that the debtors retained no interest in the garnished funds. 728 F.2d at 952–53. Thus no transfer of the debtor's property occurred within 90 days of the filing of the petition. *Id.* In reaching this conclusion, however, the *Coppie* court emphasized the fact that, under Indiana law, a hearing is held at which the court may order that the judgment be a continuing lien on the future income of the debtor, i.e. continuous garnishment. *Id.* at 952. The *Coppie* court also relied on the aforementioned *Riddervold* decision of the Second Circuit in finding the Indiana statutes similar to the New York statutes involved in that case. The *Coppie* court again specifically emphasized the fact that in *Riddervold,* it was pursuant to *court*

orders that the lien on the debtor's future income was deemed to be continuous. 728 F.2d at 952.

This Court finds the facts of the *Coppie* case to be sufficiently distinguishable from those of the present case to bar the application of the Seventh Circuit's holding here. First, *Coppie* was based on Indiana state-law garnishment provisions, while the current case involves federal-law garnishment provisions of the Internal Revenue Code. Second, the procedural distinctions between the *Coppie* facts and those currently before the Court are significant. The court orders establishing continuing liens on the debtor's property, key elements of both the *Coppie* and *Riddervold* decisions, are glaringly absent here. The IRS levy in the present case is substantially different from a procedural standpoint than the judicial process which occurred in *Coppie* and *Riddervold.* "Levy is a summary, non-judicial process, a method of self-help authorized by statute which provides the Commissioner [of Internal Revenue] with a prompt and convenient method for satisfying delinquent tax claims." *United States v. Sullivan,* 333 F.2d 100, 116 (3rd Cir.1964), *citing with approval Bull v. United States,* 295 U.S. 247, 259–60, 55 S.Ct. 695, 699–700, 79 L.Ed. 1421 (1935). While the IRS has both administrative and judicial collection powers at its disposal, the levy authority is regarded as an administrative proceeding. *See generally* Wilkens and Matthews, *A Survey of Federal Tax Collection Procedure: Rights and Remedies of Taxpayers and the Internal Revenue Service,* 3 Alaska L.Rev. 269, 272–86 (1986).

The significant procedural difference between the court order involved in *Coppie* and the administrative remedy at issue here is sufficient, therefore, to bar the application of the *Coppie* case to the present one.[1] Several other bankruptcy courts

---

1. Defendant also cites *Woodman v. L.A. Olson Co.* (*In re Woodman*), 8 B.R. 686 (Bankr. W.D.Wis.1981), a case relied upon by the *Coppie* court, in support of its arguments. USA–IRS' Reply Brief at 12, n. 11. This Court finds *Woodman* unpersuasive when applied to the present facts. That case involved six garnishments of

wages by the debtor's employer pursuant to Wisconsin law.

Service of the complaints as to four of the garnishments had occurred within 90 days of the bankruptcy filing. The parties had agreed that the wages garnished pursuant to those four complaints were preferences. *Woodman,* 8 B.R. at 686. The remaining two garnishments were

within the Seventh Circuit have also declined to apply the *Coppie* holding after distinguishing it on similar procedural grounds. *See In re Weatherspoon*, 101 B.R. 533 (Bankr.N.D.Ill.1989); *Bryant v. Gen. Electric Credit Corp.*, 58 B.R. 144 (N.D.Ill.1986); *Nealis v. Ford Motor Credit Co. (In re Nealis)*, 52 B.R. 329 (Bankr. N.D.Ill.1985).

The *Coppie* result, as well as the decisions of the other two Circuit Courts of Appeals, moreover, have not been well received by courts and commentators generally. Numerous courts have soundly criticized one or all of the holdings of the Eleventh, Seventh, and Second Circuit Courts of Appeals in *Conner, Coppie,* and *Riddervold,* respectively. *See, e.g., Schlossberg v. Finance America Corp. (In re Krumpe)*, 60 B.R. 575 (Bankr.D.Md. 1986) (addressing *Conner, Coppie,* and *Riddervold* ); *Malone v. Fidelity Nat'l Bank (In re Dunn)*, 56 B.R. 275 (Bankr. M.D.La.1985) (addressing *Conner, Coppie,* and *Riddervold* ); *Perry v. Gen. Motors Acceptance Corp. (In re Perry)*, 48 B.R. 591 (Bankr.M.D.Tenn.1985) (addressing *Conner, Coppie,* and *Riddervold* ); *Tabita v. IRS (In re Tabita)*, 38 B.R. 511 (Bankr. E.D.Pa.1984) (addressing *Riddervold* ). Commentators have likewise criticized or questioned these holdings. *See, e.g.,* 4 *Collier on Bankruptcy,* para. 547.16 at 78 (15th ed. 1990); Weisberg, *Commercial Morality, the Merchant Character, and the History of the Voidable Preference*, 39 Stan.L.Rev. 3, 121–24 (1986).

 Having thus distinguished *In re Coppie* factually from the present case, the Court is in agreement with the majority of bankruptcy courts which have addressed this issue. That majority has held that wages received by a creditor pursuant to a garnishment during the preference period

constitute an avoidable preference. *See,* 4 *Collier on Bankruptcy,* para. 547.16 at 77 (15th ed. 1990) (citations omitted). Numerous courts, in cases involving wage garnishments similar or identical to those which occurred in the present case, have found a preference and accordingly held that the levied amounts must be returned to the bankruptcy estate. *See, e.g., Hughson v. Dressler Motors, Inc. (In re Hughson)*, 74 B.R. 438 (Bankr.W.D.Va.1987); *Schlossberg v. Finance America Corp. (In re Krumpe)*, 60 B.R. 575 (Bankr.D.Md. 1986); *Tabita v. IRS (In re Tabita)*, 38 B.R. 511 (Bankr.E.D.Pa.1984); *Button v. Noe (In re Button)*, 29 B.R. 118 (Bankr. E.D.Tenn.1983); *Eggleston v. Third Nat'l Bank in Nashville (In re Eggleston)*, 19 B.R. 280 (Bankr.M.D.Tenn.1982); *Evans v. CIT Financial Services, Inc. (In re Evans)*, 16 B.R. 731 (Bankr.N.D.Ga.1982); *Mayo v. United Services Automobile Ass'n (In re Mayo)*, 19 B.R. 630 (E.D.Va. 1981); *Cox v. Gen. Electric Credit Corp. (In re Cox)*, 10 B.R. 268 (Bankr.D.Md.1981). These courts have found garnished wages like those at issue here to constitute a "transfer of an interest of the debtor in property" for purposes of 11 U.S.C. § 547(b). The basis for this finding has been 11 U.S.C. § 547(e)(3). That provision provides, "For purposes of this section, a transfer is not made until the debtor has acquired rights in the property transferred." 11 U.S.C. § 547(e)(3) (1988). Most of these courts have reasoned that a "transfer" of the debtor's wages could not occur until the debtor became entitled to his wages, noting further that the debtor has no right to wages which have not yet been earned. *See, e.g., In re Krumpe*, 60 B.R. at 578–79; *In re Tabita*, 38 B.R. at 514–15; *In re Button*, 29 B.R. at 121; *In re Eggleston*, 19 B.R. at 284; *In re Evans*, 16 B.R.

---

enforced pursuant to complaints served outside of the ninety-day preference period. It was these two garnishments which the *Woodman* court found not to constitute avoidable preferences. *Id.* at 688. Thus the date of the service of the garnishment summons and complaint was the key date under Wisconsin law for determining whether a preference had occurred.

Although it is true that the service of the tax levy in the present case occurred outside of the

ninety-day period, it is solely due to the concept of a "continuing levy"—a creature created by statute—that no additional services of garnishment pursuant to the tax levy occurred within the ninety-day period. The *Woodman* case did not involve a statutory continuing levy. The question then arises as to how much importance should be attached by this Court to the statutory continuing levy for purposes of a preference determination. This will be addressed below.

at 733; *In re Cox,* 10 B.R. at 271–72. This Court finds this reasoning persuasive and applicable to the present case. The plaintiff here had no rights in wages which were not yet earned and they therefore could not be "transferred" until he became entitled to them.[2] The garnishment which occurred on each of the five paydays within the ninety-day period prior to the bankruptcy filing (Dec. 29; Jan. 12, 26; Feb. 9, 23), therefore, could conceivably have effected a "transfer" of a property interest of the debtor for purposes of 11 U.S.C. § 547(b). These transfers are thus potentially voidable by the debtor if the other elements of a preference are sufficiently established for the Court.

This Court is aware that the aforementioned decision of the Seventh Circuit in *In re Coppie* also addressed the application of 11 U.S.C. § 547(e)(3) under facts similar to those of the present case. As noted, the *Coppie* court held that there was no "transfer" by the debtor of an interest in property for purposes of § 547(b). 728 F.2d at 953. It held that § 547(e)(3) does not come into play because

> [A]fter a garnishment order providing for a continuing lien is entered in Indiana, a debtor will never acquire rights in the portion of his or her wages to be garnished in the future. Once a garnishment order has been entered by the court, the debtor's rights in 10% of his or her future wages are irrevocably transferred to the garnishment plaintiff.

*Id.* The language of this statement again emphasizes the fact that *Coppie* was decided on the basis of the peculiarities of Indiana law, under which garnishments are issued pursuant to court order. The aforementioned procedural differences between the *Coppie* facts and those currently before the Court again assume significance here. Those differences render the *Coppie* result inapplicable to the present case as to the § 547(e)(3) argument as well.

This Court does note, however, that if the holding of *Coppie* were strictly applied, even post-petition garnishments would arguably be effective against the debtor since the debtor "will *never* acquire rights in the portion of his or her wages to be garnished in the future." *Coppie,* 728 F.2d at 953 (emphasis added). *Coppie* further held that "[the Indiana statutes], in effect, worked a novation of 10% of the debtor's salary." 728 F.2d at 952. This reasoning could also arguably justify post-petition garnishments and thus circumvent the automatic stay provisions of 11 U.S.C. § 362. The future wages, pursuant to the novation, would be the property of the garnishor and would never even come into the debtor's possession since, pursuant to the garnishment, they would be paid by the debtor's employer directly to the garnishor. The automatic stay of § 362 is "one of the fundamental debtor protections provided by the bankruptcy laws." S.Rep. No. 989, 95th Cong., 2nd Sess. 54, U.S.Code Cong. & Admin.News 1978 at 5840 (1978), *reprinted in 3 Collier on Bankruptcy* at V–54 (Appendix Vol., 15th ed. 1990). This further supports a very narrow reading of the *Coppie* decision and a limiting of it to its facts, since such a clear violation of a fundamental precept of the Bankruptcy Code could not have been intended; nor would it, moreover, survive judicial scrutiny.

Finally, this Court is also mindful of the fact that as a bankruptcy court, it is a court of equity. *See, e.g., American United Mut. Life Ins. Co. v. Avon Park,* 311 U.S. 138, 145, 61 S.Ct. 157, 161, 85 L.Ed. 91

---

**2.** To hold otherwise would be creating in effect a legal fiction—in that the garnishor would be granted absolute rights in something not yet even in existence—future wages. There remains the possibility, moreover, that there will never be *any* wages to which the garnishor's levy would attach—since the debtor retains the right to choose to work or not to work. If the latter option is chosen, then there will clearly be no wages to which the garnishment order can attach and the creditor will receive nothing. The defendant, in its Reply Brief, supports the finality of the transfer by noting that the "[garnished debtor's employer] is liable to turn the wages over to the Government once the levy is served." USA–IRS' Reply Brief at 13, n. 12. It is clear, however, that the employer is liable only *to the extent* that the debtor chooses to work and earn wages; if the debtor earns no wages, the employer cannot be held liable. *See generally* Weisberg, *Commercial Morality, the Merchant Character, and the History of the Voidable Preference,* 39 Stan.L.Rev. 3, 122 n. 501 (1986).

(1940), *citing with approval Securities and Exchange Comm'n v. United States Realty and Improvement Co.*, 310 U.S. 434, 455, 60 S.Ct. 1044, 1053, 84 L.Ed. 1293 (1940). Considering equity principles in light of the underlying purposes of the Bankruptcy Code, this Court is convinced that the result it reaches is the correct one.

This case involves a conflict between two federal statutes and the purposes for which they were enacted. The first statute, 26 U.S.C. § 6331(e), provides that "[t]he effect of a levy on salary or wages payable to or received by a taxpayer shall be continuous from the date such levy is first made until such levy is released under section 6343." 26 U.S.C. § 6331(e) (1988). This provision was added as an amendment in the Tax Reform Act of 1976 and its purpose was to promote efficiency and avoid the administrative difficulties inherent in requiring successive levies by the IRS on salary and wages. *See* S.Rep. No. 938, 94th Cong., 2nd Sess. 389, *reprinted in* 1976 U.S.Code Cong. & Admin.News 3439, 3818. *See also United States v. HAS, Inc.*, 90-1 U.S. Tax Cas. (CCH) para. 50,173, 1990 WL 54826 (D.P.R. Feb. 21, 1990).[3] The second statute, 11 U.S.C. § 547(b), is the bankruptcy preference provision. It provides that certain transfers made by an insolvent debtor within 90 days before the date of the bankruptcy filing (or within one year before if the transferee was an insider) can be later avoided by the trustee. This provision is, in a sense, a retroactive application of the automatic stay, in that it renders certain voluntary or involuntary pre-petition transfers by the debtor of an interest in property voidable. The purpose underlying the preference provision is twofold: 1) to dis-

courage creditors "from racing to the courthouse to dismember the debtor during his slide into bankruptcy"; and more importantly, 2) to "facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor." H.R.Rep. No. 595, 95th Cong., 1st Sess. 177–78 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 6138. *See Hoffman v. Conn. Dept. of Income Maintenance*, 492 U.S. 96, 109 S.Ct. 2818, 2827, 106 L.Ed.2d 76 (1989) (Marshall, J., Brennan, J., Blackmun, J., and Stevens, J., dissenting) ("[t]he preference provision prevents anxious creditors from grabbing payments from an insolvent debtor and hence getting more than their fair share.")

The application of 26 U.S.C. § 6331(e) in cases such as this one gives the IRS, in effect, a preferred status above other creditors during the 90 days prior to the bankruptcy filing. The continuing levy concept of § 6331(e) operates to pre-date all garnishments by the IRS against the debtor to the date of the initial levy, which in this case happened to be outside of the ninety-day period. If the IRS had been required to conduct successive levies on each payday of the debtor (as most other creditors would likely be required to do), it is clear that such garnishments would satisfy the "transfer of an interest of the debtor in property" requirement of § 547(b).[4] It is this requirement of § 547(b) upon which the defendant's motion to dismiss currently before the Court is based. The special or preferred status granted to the IRS by the operation of § 6331(e) against other creditors in this case is in contravention to the aforemen-

3. The defendant implicitly acknowledges in its Reply Brief that administrative convenience and efficiency were the underlying purposes of 26 U.S.C. § 6331(e) when it states "[t]he fact that [the levy on wages] is established as a continuing levy merely eliminates the need for serving additional levies." USA–IRS' Reply Brief at 12, n. 12.

4. Again, the defendant seemingly acknowledges as much in its Reply Brief when it states "The fact that [the levy on wages] is established as a continuing levy merely eliminates the need for serving additional levies. *Serving additional levies would still result in an immediate seizure*

*of the individual's interest* so that the wages would no longer be property of the debtor ..." USA–IRS' Reply Brief at 12–13, n. 12 (emphasis added). Although it is unclear what the defendant means by "immediate seizure," it apparently means at the time when each successive levy would be served. Even though characterized as immediate, each "seizure" occurring within the ninety-day preference period pursuant to successive garnishments served within that period would constitute a "transfer" for purposes of 11 U.S.C. § 547(b), the defendant's assertion to the contrary notwithstanding.

tioned "prime bankruptcy policy of equality of distribution among creditors of the debtor" which underlies § 547(b). *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 177–78 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 6138. As noted, 26 U.S.C. § 6331(e) was enacted to promote administrative efficiency and convenience. When balancing the policy considerations of administrative efficiency against that of equality among creditors in the distribution of the debtor's estate, this Court finds the latter policy to substantially outweigh in importance the former. Equality of distribution among the creditors of the debtor is a fundamental tenet of the Bankruptcy Code and as such should take precedence over considerations of administrative efficiency.

The Court therefore holds that a "transfer of an interest of the debtor in property" for the purposes of 11 U.S.C. § 547(b) did occur as a result of the IRS levy in this case. The aforementioned relevant statutory authority, judicial precedent, and equity principles considered in light of the fundamental purposes of the Bankruptcy Code compel this result. Whether this "transfer" constitutes a voidable preference remains to be established.

Accordingly, the defendant's motion to dismiss for failure to state a claim upon which relief can be granted is denied.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.