**In re Susan Elizabeth LEWIS, Debtor.**

**Susan Elizabeth LEWIS, Plaintiff,**

**v.**

**STATE EMPLOYEES CREDIT UNION OF MARYLAND, INC., Defendant.**

Bankruptcy No. 88–4–3104–SD.
Adv. No. 89A–0147–SD.

United States Bankruptcy Court,
D. Maryland,
at Rockville.

June 21, 1990.

James M. Greenan, Landover, Md., for plaintiff.

John F. Brown, Towson, Md., for defendant.

## MEMORANDUM OF DECISION

E. STEPHEN DERBY, Bankruptcy Judge.

The question at issue is whether a transfer effected by a Maryland wage garnishment lien, for purposes of the 90 day preference period under 11 U.S.C. § 547(b)(4)(A), occurs when the wages are earned, when they are payable, or when they are paid. Debtor, Susan Lewis, has filed a Complaint to Avoid and Recover Preferential Transfer under 11 U.S.C. §§ 522(h), 547(b) and 550(a)(1) preferential transfers in the aggregate amount of $847.50. The parties are in agreement as to the facts.

On May 4, 1988 defendant obtained a judgment against Debtor in the amounts of $4,933.18 principal and interest, $50.00 costs, and $739.98 in attorneys' fees. Defendant Credit Union filed a garnishment on May 27, 1988, and the garnishment was served on Debtor's employer on June 20, 1988. The Credit Union received from Debtor's employer three payments of $282.50 each on August 11, September 20, and October 3, 1988. These payments total $847.50.

Debtor filed her bankruptcy petition on October 27, 1988. Therefore, the first day of the 90 day preference period was July 29, 1988.

A paycheck was cut for the Debtor on July 29, 1988 covering the period from July 1 through July 29, 1988. The garnishment payment of $282.50 received by the Credit Union on August 11, 1988 was on account of this payroll. Section 547(c)(7) provides that a Trustee may not avoid a transfer as a preference in the case of a consumer debtor if "... the aggregate value of all property that constitutes or is affected by such transfer is less than $600." Therefore, unless the payment received by the defendant Credit Union of $282.50 on August 11, 1988 with respect to the payroll period ending July 29, 1988 constitutes a transfer within the 90 day preference peri-

od, the complaint must be dismissed because the subsequent two payments total only $565.00, which is less than the $600.00 threshold for avoidability. *In re Holyfield*, 50 B.R. 695 (Bkrtcy.D.Md.1985), in which the court expressed its opinion that this result for involuntary transfers was undesirable.

In order for Debtor to prevail, she must also prove that the six requirements of Section 547(b) have been satisfied:

"(1) the transfer of property of the debtor; (2) to or for the benefit of a creditor; (3) on account of an antecedent debt; (4) while the debtor was insolvent; (5) within 90 days before the filing of a petition; and (6) which enables a creditor to receive more under the distribution scheme of Chapter 7 than would have been received if the transfer had not been made."

*In re Harrington*, 70 B.R. 301, 303 (Bkrtcy.S.D.Fla.1987). Section 547(e)(3) of the Code states that "... a transfer is not made until the debtor has *acquired rights* in the property transferred." (Emphasis added.) Further, Section 547(e)(1)(B) provides that "... a transfer of ... property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee."

The defendant Credit Union argues that the transfer by way of garnishment occurred when Debtor acquired rights in the property transferred, namely, her wages, and that the Debtor acquired those rights at the time she earned her salary each working day prior to July 29, 1988, i.e. before commencement of the 90 day preference period.

The question raised is thus whether, within the meaning of 11 U.S.C. §§ 547(e)(3) and (e)(1)(B), the transfer effected by the garnishment occurred (a) each working day that Debtor accrued earnings (July 1 through July 29, 1988), (b) at the end of the pay period when the wages were payable (July 29, 1988), or (c) on the date the garnishor Credit Union received the garnished wages from Debtor's employer (August 11, 1988). The court concludes that the transfer occurred on the date the garnished wages became payable, namely, July 29, 1988. Since this was the first day of the 90 day preference period, judgment will be entered in favor of Debtor and against the Credit Union avoiding preferential transfers in the aggregate amount of $847.50.

The cases of *In re Cox*, 10 B.R. 268 (Bkrtcy.D.Md.1981) and *In re Krumpe*, 60 B.R. 575 (Bkrtcy.D.Md.1986) are not dispositive. In each of those cases debtors sought to recover garnished wages as preferential transfers when the garnishment had been served more than 90 days before the petition filing date, but the wages had been both earned and paid during the 90 day preference period. The court concluded in each case that the transfer did not occur when the garnishment was served on the employer, but rather it could only occur after the wages had been earned and the debtor had acquired rights in the wages. Therefore, in each case judgment was entered in favor of debtors. However, since the issue in each case was whether the date the garnishment was served or the date the wages were earned and thereafter paid was controlling, neither case addressed the issue raised here of whether the determinative date is the date wages are earned or the date they are payable.

In the *Cox* case the court drew a distinction between a creditor's perfection of a lien on future wages as against other creditors by service of a writ of garnishment, and a preferential transfer of such wages which can only occur when a debtor has acquired rights in them. *Cox, supra*, 10 B.R. at 271–72. Therefore, while service of a writ of garnishment may satisfy the Section 547(e)(1)(B) test for a transfer by establishing priority over other creditors, it does not satisfy the Section 547(e)(3) test that a debtor must have acquired rights in the property transferred. See Md. Comm.Law Code Ann. § 15–603(b) (1990 Repl.Vol.) which requires that attachments be satisfied in the order in which they are served.

Maryland law provides that the garnishment lien only attaches to wages that are

payable or which become payable. Maryland Commercial Law Article, Section 15–602(a) provides:

"(a) *Attachment constitutes continuing lien.*—When an attachment is levied against the wages of a judgment debtor, it shall constitute a lien on all attachable wages that are payable at the time the attachment is served or which become payable until the judgment, interest, and costs, as specified in the attachment, are satisfied." Md.Comm.Law Code Ann., § 15–602(a) (1983 Repl.Vol.)

Once the lien attaches, the employer must "... withhold all attachable wages payable to the judgment debtor and remit the amount withheld to the judgment creditor...." *Id.* at § 15–603(a).

The focus of Maryland's garnishment law is thus on when wages become payable. The lien attaches to future wages when they become payable. The lien does not attach when the wages are earned, although the lien may then be in expectancy. Likewise, a debtor employee's right to receive payment of wages arises on payday, customarily after wages are earned. Pay dates for particular jobs are set as between employer and employee by agreement, custom or employer policy. It is on payday that a debtor employee acquires the present right to be paid, as contrasted to a future expectancy, and simultaneously a garnishment lien attaches. It is at this moment when wages become payable that all the Section 547(e) elements for a transfer have been satisfied and debtor has acquired payment rights in wages, as prescribed by Section 547(e)(3), which are transferred to the attaching creditor.

The provision that an attachment, once levied, constitutes a lien on wages which become payable was the result of a deliberate choice by the Maryland legislature. This provision was added by Chapter 452 of the Laws of Maryland of 1978, effective July 1, 1979. Prior to its enactment, Maryland law provided that "[a]n attachment of an employee's wages in the hands of his employer does not affect those wages not *actually due* at the date of the attachment." Md.Comm.Law Ann. § 15–602(a)

(1975). (Emphasis supplied.) This provision required writs of attachment to be filed each month to reach a debtor's wages, except where special statutory provisions were applicable, such as for repeated child or spousal support arrearages. See Ann. Code of Md., Art. 16, § 5B (1973 Repl.Vol., 1976 Cum.Supp.), enacted by Md.Laws of 1976, Ch. 496. The test enunciated in case law for whether wages were "actually due" under various versions of the wage attachment law prior to July 1, 1979 was whether the debtor could sue for the wages.

"The test of the garnishee's liability is that he has funds, property or credits in his hands, the property of the debtor, for which the debtor would have the right to sue. The plaintiff can recover from the garnishee only by the same rights and to the same extent as the debtor could recover if he were suing the garnishee." *Bendix Radio Corp. v. Hoy*, 207 Md. 225, 229, 114 A.2d 45, 47 (1955).

*Accord, United States v. Williams*, 279 Md. 673, 678, 679, 370 A.2d 1134, 1137 (1977).

When the wage attachment statutes were amended to provide for a continuing lien, the legislature also substituted the terms "payable" and "which become payable" for the term "actually due". The term "become payable" is more precise than "actually due" in common parlance; it describes a particular moment, generally payday; and it focuses not on whether the wage obligation is owed, but whether there is a right to immediate payment of the obligation.

Words of a statute should be given their ordinary and popularly understood meaning. *See Drews v. State*, 224 Md. 186, 167 A.2d 341 (1961); *Pressman v. Barnes*, 209 Md. 544, 558–59, 121 A.2d 816 (1956). When the words of a statute are not ambiguous, it is not appropriate to resort to extrinsic aids to find the intent of the legislature. *Pressman v. Barnes, supra; Rogan v. B. & O. R.R. Co.*, 188 Md. 44, 53, 52 A.2d 261 (1947); *Dep't of Pub. Welfare v. Davenport*, —— U.S. ——, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990). When the wages

become payable controls the rights of the parties. In this matter the wages which Debtor earned in July, 1988 become payable to her on July 29, when Debtor's payroll check was cut in the normal course of business. On that date she acquired the right to immediate payment and the lien was imposed which caused a transfer to defendant Credit Union of Debtor's interest in her wages and her right to receive immediate payment of them.

Because this July 29, 1988 transfer was within 90 days before the petition was filed, it constituted a preferential transfer which, with the subsequent attachments, may be avoided because they exceed $600. 11 U.S.C. § 547(c)(7). Therefore, judgment will be entered in favor of plaintiff.