**In re Larry Joe POLCE and Karen Sue Polce, Debtors.**

**Thomas H. FLUHARTY, Plaintiff,**

**v.**

**GENERAL MOTORS ACCEPTANCE CORPORATION, Defendant.**

**Bankruptcy No. 93–11300. Adv. No. 94–1001.**

United States Bankruptcy Court, N.D. West Virginia, Clarksburg Division.

June 22, 1994.

**582**

John Wiley, Morgantown, WV, for debtors (Polces') and Thomas H. Fluharty, Trustee.

Brian Conati, Huntington, WV, for General Motors Acceptance Corp.

## MEMORANDUM OPINION AND ORDER

L. EDWARD FRIEND, II, Chief Judge.

In this case, Larry Joe Polce and Karen Sue Polce jointly filed their petition in bankruptcy under Chapter 7 of the Bankruptcy Code on December 23, 1993 and received their discharge on March 25, 1994. Prior to the debtors filing their petition, on June 9, 1992, General Motors Acceptance Corporation (hereinafter "GMAC") received a judgment against the debtors in the amount of $7,490.98 plus interest. A suggestee execution was served via certified mail on May 6, 1993, upon Lenox Mining Company (hereinafter "Lenox"), Larry Joe Polce's employer. Lenox, as garnishee, withheld the appropriate wages and paid them to GMAC. Lenox withheld wages both prior to 90 days prepetition and within 90 days pre-petition. Lenox paid all such wages to GMAC within 90 days prepetition. On January 6, 1994, the Chapter 7 trustee, Thomas H. Fluharty (hereinafter "trustee") and the debtors jointly filed a complaint to recover as a preference all said wages.[1] Whether the transfers of the subject wages may be avoided as preferences is dependent upon Bankruptcy Code § 547.

Bankruptcy Code § 547(b) allows a trustee to avoid as a preferential transfer

any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). The issue over which the parties argue is whether, and to what extent, the subject garnishments and subsequent payments of the wages to GMAC were transfers within the meaning of Bankruptcy Code § 547(b)(4)(A). There is no argument as to the other elements of § 547(b) and, therefore, it is assumed that, but for § 547(b)(4)(A), the subject transfers were preferential. To resolve the issue, the question to be decided is whether the transfer of the debtor's wages occurred at the time the suggestee execution was served upon the garnishee or at some later time such as when the debtor earned his wages or the garnishee paid the garnished portion of the debtor's wages to the sheriff or GMAC.

■ Essentially, courts which have posited the issue have followed one of two theories as to when a transfer of garnished wages occurs. One theory is that the transfer of the debtor's property does not occur until the debtor has obtained a right in his or her wages. *Eggleston v. Third Nat'l Bank in Nashville,* 19 B.R. 280 (Bankr.M.D.Tenn. 1982). *See also Mayo v. United Services Automobile Assoc.,* 19 B.R. 630 (E.D.Va.

---

**1.** The Court is cognizant of the fact that for debtors to avoid a preferential transfer pursuant to Bankruptcy Code § 547, they must seek to utilize Bankruptcy Code § 522(h) and the restrictions imposed under § 522(g). *See* 11 U.S.C. §§ 522(h) and 522(g). Because the trustee is a party plaintiff, the burdens imposed by the restrictions under Bankruptcy Code § 522(g) are moot. However, were this Court to impose the § 522(g) requirements upon debtors, because the very nature of a garnishment proceeding results in an involuntary transfer of property, such transfer not being concealed by the debtors, the debtors most likely would have been found to have overcome the hurdles imposed under § 522(g).

1981); *Perry v. GMAC*, 48 B.R. 591 (Bankr. M.D.Tenn.1985). Other courts have held that the service of the garnishment order upon the debtor's employer creates a continuing levy which terminates any legal interest which the debtor has in his or her future wages. *Riddervold v. Saratoga Hospital*, 647 F.2d 342 (2d Cir.1981); *In the Matter of Rutty*, 39 B.R. 204 (Bankr.S.D.N.Y.1984); *Askin Marine Company v. Conner*, 733 F.2d 1560 (11th Cir.1984); *In re Coppie*, 728 F.2d 951 (7th Cir.1984); and *Momentum Computer Systems Int'l v. Cortani, Brown, Rigoli*, 66 B.R. 512 (D.N.D.Cal.1986). Although federal bankruptcy law determines under what circumstances a transfer may be avoided as a preference, state law must be applied to determine when a particular transfer is deemed to have taken place. *In re Coppie*, 728 F.2d 951, 952 (7th Cir.1984).

## WAGE VESTING THEORY

*Eggleston v. Third Nat'l Bank in Nashville*, 19 B.R. 280 (Bankr.M.D.Tenn.1982) is demonstrative of those decisions which support the proposition that a transfer of a debtor's wages does not occur until the debtor has obtained a right or rights in such wages. In that case, the Third National Bank obtained a judgment against the debtor on October 28, 1980. The bank had an execution of garnishment issued on January 6, 1981. On February 20, 1981, the bank had a copy of the garnishment served upon the debtor's employer. In April, May and June of 1981, monies were withheld by the garnishee and paid into the court clerk's office pursuant to Tennessee law. The debtor filed a voluntary Chapter 7 petition on June 25, 1981. Because Bankruptcy Code § 547(e)(3) states that for preference purposes "a transfer is not made until the debtor has acquired rights in the property transferred," the court stated that the transfer of debtor's wages could not occur until the wages were earned. *Eggleston* at 284. *See* 11 U.S.C. § 547(e)(3). The court, citing *Beaumont v. Eason*, 59 Tenn. (12 Heisk.) 417, 418–21 (1873), recognized that Tennessee law supports the conclusion and quoted the Tennessee Supreme Court:

> The legal effect of the levy of an execution by garnishment is well settled. The moment the garnishment is served, the debt, being then due, passes out of the control of both the debtor and creditor, and, so to speak, is in the custody of the law. The debt is seized in a legal mode, and placed out of the power of the parties . . .

> . . . [The service of the garnishment] fixes a lien on the debt or effects in the hands of the garnishee, and he holds them under the control of the court, and acquires a special property in them as agent of the court. As such agent, it is the duty of the garnishee to go to the court with the effects in his hands *belonging to the debtor*, and make answer according to the requirements of the process of garnishment. When he has answered, admitting his indebtedness, or that he has effects *belonging to the debtor*, the court proceeds to subject them to the satisfaction of the debt.

> . . . The garnishee becomes the agent of the court, not to sell, but to keep and return the property for the action of the court. He is vested with the special title as a custodian of the property, *but not with the title that authorizes him to sell and convey title*. If the debtor sues him for the property, he can interpose his special title for his protection. The title of the debtor is so far divested that he cannot dispute or claim against the special title of the garnishee . . . This is the necessary result of the legal fact that the service of the garnishment does no more than vest in the garnishee a special title as a custodian for the court, *and divests the title of the debtor only so far as to restrain his power to regain his property while it is in the custody of the garnishee.* So long as the property is in the custody of the garnishee, the creditor can not resort to his remedy by execution, and if he does so he thereby waives his right to look to the property in the hands of the garnishee, and the debtor at once has the right to reclaim the property.

*Eggleston* at 284.

The court in *Eggleston* found that the debtor retained an interest in his wages until

such interest was terminated by the court's payment of the garnished wages to the creditor. *Id.* at 285. Because the garnished monies were paid over to the creditor within the 3 months preceding debtor's filing his petition in bankruptcy, the court concluded that the transfers in question occurred during the 90–day pre-petition period and, thus, were preferential.

The court in *Perry v. GMAC,* 48 B.R. 591 (Bankr.M.D.Tenn.1985) augmented this analysis. The court stated that under Tennessee law a debtor retains important and substantial interests in garnished wages after service of the writ on the debtor's employer and that such residual rights and interests are afforded due process protections by Tennessee law. *Id.* at 595. First, when a garnishment summons is served upon a debtor's employer, Tennessee law requires that the debtor be given notice informing the debtor of various rights. When the debtor becomes entitled to receive wages, the garnishment requires the employer to segregate the funds subject to garnishment and to pay them not to the creditor, but to the clerk of the appropriate state court. The debtor then has the right to move the court for permission to make installment payments and halt the garnishment. "The debtor has the right to recover the wages if they are wrongfully paid or if the judgment is satisfied, expires, voided or *otherwise fails. The debtor can exempt certain wages and, therefore, complete divestment cannot occur at least until the debtor's entitlement to the exemptions is determined." Id.* at 595 (emphasis added).

## CONTINUING LIEN THEORY

To the contrary, the "continuing lien" theory is exemplified by the oft-cited decision in *Riddervold v. Saratoga Hospital,* 647 F.2d 342 (2d Cir.1981). In that case, an income execution pursuant to a judgment was served upon Riddervold's employer prior to the 90–day preference period. However, within the 90–day preference period, debtor's employer withheld wages and paid them to the garnishor. The court stated that the service of the income execution upon the employer worked a novation whereby the employer owed a percentage of the employee's salary not to the employee, but to the sheriff for the benefit of the judgment creditor. *Id.* at 346.

It is true that the employer comes under no liability to pay the sheriff until the wages are earned. Indeed the last sentence of N.Y.C.P.L.R. § 5231(e) expressly provides for this eventuality of stating that if "employment is terminated by resignation or dismissal ..., the levy shall thereafter be ineffective." But this does not require us to hold that the portion of the salary subject to the income execution vests in the employee for a fleeting second after it has been earned, when in fact the employer becomes bound at that very time to pay it to the sheriff.

We emphasize that we are here concerned with payments which were not made simply in discharge of a lien but were pursuant to an execution levied many months before the beginning of the 90–day period. Our decision follows the "continuing levy" principle announced by Judge L. Hand and adopted by Judge Mayer under the Act of 1898 scores of years ago. It seems also to conform to the intimations of *Clarke v. Larremore, supra,* 188 U.S. [486] at 488–90, 23 S.Ct. [363] at 364–365 [47 L.Ed. 555 (1903)], that when a writ of execution under a valid lien has been fully executed by payment to the execution creditor, a subsequent bankruptcy does not affect the creditor's rights....

*Id.* at 346–47. *See also In the Matter of Rutty,* 39 B.R. 204 (Bankr.S.D.N.Y.1984). The proposition supported by the continuing lien theory as applied in *Riddervold* is that payments made to judgment creditors pursuant to an income execution do not constitute transfers of a debtor's property recoverable as preferences. Accordingly, it is the time of service of the income execution upon the officer or judgment creditor which dictates when, for preference considerations, a transfer takes effect.

Interpreting Indiana law, the court in *In the Matter of Coppie,* 728 F.2d 951 (7th Cir.1984) stated that

Following court orders that the liens on these debtors' future income be continuous, the debtors no longer had a property interest in 10% of their future salaries....

Rather, the employers owed that portion of their salaries directly to the garnishment plaintiffs and were liable to the plaintiffs for those amounts if the wages were not withheld pursuant to the court orders. True, the employers were not liable until the wages were actually earned, but once the court orders were entered the debtors were no longer legally entitled to 10% of their future salaries. Because the court orders legally transferred 10% of the debtors' wages to the garnishment plaintiffs, there were no transfers at the time of the actual garnishments in question.

*Id.* at 952, 53. The court found that because the entry of a garnishment order providing for a continuing lien permanently strips a debtor of the ability to acquire rights in the portion of his or her wages to be garnished in the future, Bankruptcy Code § 547(e)(3) did not come into play. *Id.* at 953. "Once a garnishment order has been entered by a court, the debtor's rights in 10% of his or her future wages are irrevocably transferred to the garnishment plaintiff." *Id.*

The plaintiff's position in the subject case is that debtors continue to have rights in their wages until earned and, thus, a transfer pursuant to a garnishment may not occur until debtor earns his or her wages. On the other hand, creditors argue in favor of the continuing lien theory. West Virginia law shall dictate when the subject transfers occurred.

### WEST VIRGINIA LAW

■ West Virginia Code, Chapter 38, Article 5A, Suggestions of Salary and Wages of Persons Engaged in Private Employment, governs wage garnishment proceedings. The West Virginia Code provides that, where a judgment creditor meets various requirements and the state court issues a suggestee execution against the judgment debtor's salary or wages, then

> ... upon presentation of such execution by the officer to whom delivered for collection to the person or persons from which such salary or wages are due and owing or thereafter may become due and owing to the judgment debtor, the execution and the expenses thereof shall become a lien and

> continuing levy upon the salary or wages due or to become due to the judgment debtor within one year after the issuance of the same. . . .

W.VA.CODE § 38–5A–3 (1986). In other words, when the suggestee execution is served upon debtor's employer (i.e., the garnishee), the execution becomes a lien and continuing levy upon the debtor's salary or wages due or which may become due within one year after the issuance of the execution.

■ However, because Bankruptcy Code § 547(e)(3) requires that, for purposes of § 547, a transfer is not made until the debtor has acquired rights in the property transferred, the service of the suggestee execution does not complete the transfer. *See* 11 U.S.C. § 547(e)(3). West Virginia Code § 38–5A–9 states that

> A judgment debtor to whom money is due or to become due which would otherwise be subject to suggestion under this article may have the same exempted from levy in the manner and to the extent provided for by article eight [§ 38–8–1 et seq.] of this chapter. The exemption may be claimed for sums currently accruing, but must be asserted anew as to any salary or wages which shall begin to accrue after the next payment date. . . .

W.VA.CODE § 38–5A–9 (1986). While debtor's wages are accruing, but before each particular pay date (e.g., weekly, bi-weekly, monthly, etc.), the debtor, in the manner and to the extent provided for by Article 8 of Chapter 38, may apply to exempt the wages otherwise subject to levy. *See State v. Richards*, 127 W.Va. 703, 704, 34 S.E.2d 271 (1945); and *Miller v. Barron*, 177 W.Va. 292, 352 S.E.2d 41, 44 (1986).

■■ A debtor has no rights in wages until they are earned. Even though a debtor's rights with respect to garnished wages are limited to the extent such wages are entitled to be exempted by the provisions pursuant to West Virginia Code § 38–5A–9, the exemption opportunity is a "right" for purposes of considerations under Bankruptcy Code § 547(e). A wage earner becomes entitled to such right as his or her wages accrue. Beginning with the first day of a particular

pay period during which a wage earner works, and continuing until payday, such wage earner has the right to apply to exempt such wages otherwise subject to garnishment during that particular pay period. *See Miller*, 352 S.E.2d at 44. Because this right does not arise until debtor actually commences work at the beginning of a particular pay period, it is at this time, at the earliest, which any conceivable transfer of garnished wages may occur. The wage earner loses this right on the date which marks the end of a particular pay period (i.e., when the debtor's right to make application for exemption expires). Therefore, any conceivable transfer of the garnished wages can take place no earlier than the date on which debtor loses his or her exemption right.

■ This Court has found no authority which states the particular point at which garnished wages shall be deemed to have transferred to the judgment creditor. Bankruptcy Code § 547(e)(2) dictates that when a transfer takes place is dependent upon the perfection of such transfer. 11 U.S.C. § 547(e)(2). Section 547(e)(1)(B) states that a transfer of property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee. 11 U.S.C. § 547(e)(1)(B). When a garnishor's interest is perfected such that no creditor on a simple contract may acquire a superior judicial lien is dependent upon West Virginia law. Depending upon when the transfer in a garnishment proceeding shall be deemed to be perfected, the transfer under Bankruptcy Code § 547(e)(2) may be deemed to have taken place at one of several different times. Notwithstanding that, Bankruptcy Code § 547(e)(2) is subject to Bankruptcy Code § 547(e)(3). Therefore, under any circumstances and in accordance with this Court's earlier analysis, the transfer cannot be deemed to have taken place until, at the earliest, debtor has lost his or her exemption rights under state law.

■ Under W.Va.Code § 38–5A–3, upon presentation of the suggestee execution to the judgment debtor's employer, a creditor on a simple contract would then be unable to acquire a superior judicial lien. Given that,

Bankruptcy Code § 547(e)(1)(B) would command that perfection occurred at the presentation of the suggestee execution to the judgment debtor's employer. *See* 11 U.S.C. § 547(e)(1)(B). It therefore follows that, under Bankruptcy Code § 547(e)(2)(A), the transfer will be deemed to have been made when the transfer takes effect between the transferor and the transferee. 11 U.S.C. § 547(e)(2)(A). However, because § 547(e)(2)(A) is made operative "except as provided in" § 547(e)(3), and because § 547(e)(3) dictates that a transfer may not be made until the debtor has acquired rights in the property transferred, the earliest point at which the transfer may be deemed to have occurred, under West Virginia law, shall be when the debtor loses his or her exemption rights. Ultimately, the transfers take place at the end of each successive pay period.

■ Whether the continuing lien theory or the wage vesting theory applies is dependent solely upon the state law governing a particular case. As the court stated in *Perry v. GMAC*, 48 B.R. 591, 596 (Bankr.M.D.Tenn. 1985),

> [if] it makes sense at all, the "continuing levy" concept offered in *Riddervold* and applied in *Coppie* operates only in a state which would recognize execution of the original writ of garnishment as accomplishing the complete end to the debtor's legal and equitable rights in future wages.

Under West Virginia law, a garnishment lien is effective for one year after its issuance and extends to any wages which become due within the year following such issuance. However, under certain conditions, a judgment debtor during that time may exempt such garnished wages. "The fact that the garnishment lien continues and attaches to earnings is not dispositive of the question whether the debtor also acquires rights and interests in the same wages as they are earned." *Perry* at 597.

In the subject case, this Court found that the transfers of debtors' garnished wages occurred at the end of each pay period. Therefore, of the total wages withheld and paid to GMAC for the period of May 8, 1993 through September 24, 1993, all prior to 90

days prepetition, none shall constitute a preferential transfer for purposes of Bankruptcy Code § 547(b)(4)(A). All remaining wages withheld and paid to GMAC subsequent to September 24, 1993, shall be considered preferential transfers subject to the trustee's avoiding powers. Pursuant to Bankruptcy Code § 550, the trustee may recover for the benefit of the estate, the avoidable preferences as hereinabove determined from GMAC. *See* 11 U.S.C. § 550.

It is accordingly **SO ORDERED.**