In re AUSMAN JEWELERS, INC., Debtor.

Michael E. KEPLER, Trustee, Plaintiff,

v.

AETNA FINANCE COMPANY, Defendant.

Bankruptcy No. 92–31822–7.
Adv. No. 94–3133–7.

United States Bankruptcy Court, W.D. Wisconsin.

Jan. 20, 1995.

---

Timothy J. Peyton, Kepler & Peyton, Madison, WI, for plaintiff.

Penny G. Gentges, Bass & Moglowsky, S.C., Milwaukee, WI, for defendant.

## MEMORANDUM DECISION

ROBERT D. MARTIN, Chief Judge.

Ausman Jewelers, Inc. ("Ausman") filed for chapter 11 bankruptcy on May 22, 1992. The case was converted to chapter 7 on July 12, 1993. Prior to filing, Ausman paid $4,330.39 to Aetna Finance Company d/b/a ITT Financial Services ("Aetna") for the benefit of two of its customers. The chapter 7 trustee seeks to recover the payment as a preference. After a trial on December 8, 1994, I held the transfer to be an avoidable preference under 11 U.S.C. § 547 and invited further briefing on whether Aetna was an initial transferee from whom recovery could be had under 11 U.S.C. § 550 (1994).

Ausman sold jewelry pursuant to a "90–Day Same–As–Cash" program ("the program") under which customers could pay for merchandise up to 90 days after the date of sale without paying interest. Customers utilizing the program would sign contracts evidencing their intent to pay within 90 days of

the purchase date. Ausman was paid the price of the merchandise as soon as it delivered the signed contracts to Aetna.

In December 1991, two customers purchased merchandise totaling $4,330.39 under the program. By virtue of their contracts, the customers agreed to pay Aetna for the price of the merchandise. The customers returned the merchandise to Ausman within a short time after purchase and were promised a refund of the purchase price. Ausman, however, was financially unable to refund cash immediately and instead agreed to pay the customers' contractual obligation to Aetna. In March 1992, Ausman paid Aetna the total amount the two customers owed. Almost three months later, Ausman filed bankruptcy.

■ Sections 547 and 550 of the Bankruptcy Code are independent and require two steps to recover a preference claim. *Levit v. Ingersoll Rand Financial Corp.*, 874 F.2d 1186, 1194 (7th Cir.1989).[1] The transfer must be avoidable under 11 U.S.C. § 547[2] and the party from whom payment is being sought must be responsible for payment under 11 U.S.C. § 550(a).

■ Section 547 requires six elements be shown to avoid a transfer. The trustee must show that: a transfer of the property of the debtor to or for the benefit of a creditor, for or on account of antecedent debt, while the debtor is insolvent, within 90 days preceding the petition, and the creditor has received more than what the creditor would have received under chapter 7. *Matter of Smith*, 966 F.2d 1527 (7th Cir.1992). Aetna affirmatively claimed the payment was in the ordinary course of business and excepted from the class of avoidable preferences.

## I

■ Aetna argues that the transfer did not diminish the estate. *Matter of Smith*, 966 F.2d 1527, 1535 (7th Cir.1992) ("[C]ourts, have also long held that to be avoidable, transfers must result in a depletion or diminution of the debtor's estate."). Creditors are not harmed by a transfer of property not belonging to the debtor as the amount they would share in the distribution of the debtor's estate would not be diminished. *In re Hartley*, 825 F.2d 1067, 1070 (6th Cir.1987). The principal factor in determining if the estate has been diminished is the extent the debtor owned or controlled the transferred property. *Id.* As was held following trial, the evidence in this case shows that the funds used by Ausman to pay Aetna were in Ausman's general account. The funds were

1. An independent reading of §§ 547 and 550 is based upon the court's decision in *Levit v. Ingersoll Rand Financial Corp.* (*Deprizio*), 874 F.2d 1186, 1194, which held that if a transfer benefits an insider and is avoidable, because § 550 does not differentiate between insiders and noninsiders, recovery from a transferee who is a noninsider may be had. Recovery may also be had where the noninsider has no liability under § 547. *Deprizio's* holding was overruled by the enactment of the Bankruptcy Reform Act of 1994 on October 22, 1994. Section 202 of the Act, which is codified at 11 U.S.C. § 550(c), provides:

(c) If a transfer made between 90 days and one year before the filing of the petition—
(1) is avoided under section 547(b) of this title; and
(2) was made for the benefit of a creditor that at the time of such transfer was an insider;
the trustee may not recover under subsection (a) from a transferee that is not an insider. However, section 202 has no effect on the Seventh Circuit's interpretation of §§ 547 and 550. The section is concerned with the recovery of payments made beyond 90 days of filing, which is not the issue in our case.

2. 11 U.S.C. § 547(b) provides:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made—
(A) on or within 90 days before the date of the filing of the petition; or
(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
(5) that enables such creditor to receive more than such creditor would receive if—
(A) the case were a case under chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

never segregated from the other funds, nor were they earmarked for Aetna.

When the customers returned the merchandise without receiving an immediate cash refund, a new debtor-creditor relationship was created between Ausman and the two customers. By accepting Ausman's offer to pay Aetna, the customers chose to be paid indirectly at a time in the future. They extended credit to Ausman for the price of the returned merchandise. Ausman's payment, although made to Aetna, was made for the benefit of selected creditors, the customers. No debtor-creditor relationship existed at any time between Aetna and Ausman.[3]

Ausman used funds obtained from unknown sources (possibly from resale of the returned jewelry, although there is no evidence of it) for the benefit of two of its creditors. By using these funds for the sole benefit of the two creditors, the Ausman estate was diminished and other unsecured creditors were injured to the extent they were deprived of their share of the $4,330.39.

## II

■ Payments made in the ordinary course of business are among the categories of transfers excepted from avoidance. *See* 11 U.S.C. § 547(c)(2) (1994). The ordinary course of business exception requires that the payment was on account of debt incurred in both the creditor's and debtor's business, the payment was made and received in the ordinary course of the involved parties' business, and the payment was made according to ordinary business terms. *In the Matter of Tolona Pizza Products Corp.*, 3 F.3d 1029, 1031 (7th Cir.1993). The burden of proof under § 547(c) lies with the party from whom

recovery is being sought. 11 U.S.C. § 547(g) (1994).[4]

At trial, Aetna presented no evidence that the transfer was in either Ausman's or the customers' ordinary course of business. Nor was there any evidence that the transaction was ordinary for the industry as a whole. *See Matter of Tolona Pizza Products Corp.*, 3 F.3d at 1033 ("[T]he creditor must show that the payment received was made in the ordinary business terms in the industry."). The only evidence produced at trial was the sole testimony of Richard Ausman, president of debtor, that Ausman's standard practice was to refund cash to customers who returned merchandise. Aetna, therefore, did not meet its burden of proof with regard to the applicability of the ordinary course of business exception.

## III

■ Aetna asserts that the trustee may not recover from Aetna as it is not the entity for whose benefit such transfer was made. That is not the issue.[5]

■ Under § 550(a)(1), a trustee is provided a choice of from whom to recover a preference. *Bonded Financial Services v. European Amer. Bank*, 838 F.2d 890, 895 (7th Cir.1988). A trustee either may recover from "the initial transferee of such transfer" or from "the entity for whose benefit such transfer was made." 11 U.S.C. § 550(a)(1). "Section 550(a)(1) recognizes that debtors often pay money to A for the benefit of B; that B may have indeed arranged for the payment ...; that but for the payment B may have had to make good on the guarantee or pay off his own debt; and accordingly that B should be treated the same way initial recipients are treated." *Bonded Financial*, 838

---

3. The customers delegated to Ausman their duties under the agreement with Aetna. The delegation, however, did not make Aetna Ausman's creditor. Any claim Aetna may have for breach of contract would remain against the customers and not Ausman. E. Allen Farnsworth, *Farnsworth On Contracts* § 11.11.

4. 11 U.S.C. § 547(g) provides:
   ... the creditor or party in interest against whom recovery or avoidance is sought has the burden of proving the nonavoidability of a transfer under subsection (c) of this section.

5. 11 U.S.C. § 550(a)(1) provides:

   (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
   (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made.

F.2d at 896. This is almost the exact situation in our case. Ausman paid money to Aetna for the two customers so that they would not have to pay it. Thus, the trustee may recover either from the customers, as the entity for whose benefit the transfer was made,[6] or the initial transferee. In order to recover from Aetna, the trustee must establish that Aetna is the initial transferee.

The Bankruptcy Code does not define "initial transferee." Case law suggests an initial transferee is the first party exercising "dominion over the money or other asset" or "has the right to put [the property] to one's own use." *Bonded Financial*, 838 F.2d at 893. In our case, when Aetna was paid, it was able to do with the received funds whatever it wished. It was the "initial" party to exercise control over the transferred funds. Thus Aetna was the initial transferee of the funds. Because Aetna was the initial transferee of the funds, it is responsible to the trustee for the repayment of the preference.

The result of recovering the transfer from Aetna may be, *inter alia*, the resurrection of an obligation from the two customers to Aetna for the payment on the contracts.[7] The customers are not parties to this action and pursuit of them by Aetna, if undertaken at all, must therefore be the subject of a separate action, presumably in a different court.[8] None of this precludes entering judgment in favor of the trustee against Aetna in this adversary proceeding. Judgment should therefore be ordered, consistent with the findings of fact and conclusions of law contained herein.

6. The customers were benefitted by being released from their obligations to Aetna.

7. While the Code provides that a trustee may avoid a preferential transfer, it does not explain the effect of avoidance. David G. Epstein, Steve H. Nickles, James J. White, *Bankruptcy* § 6–80 (1992). It does not define "avoidance" nor does case law provide any meaningful assistance in defining the term or its effect. The term "avoid," as provided in § 547(b), is defined by *Black's Law Dictionary 136* (6th ed 1990) as "To avoid; cancel; make void; to destroy the efficacy of anything." To avoid a transfer would then be to nullify it. Epstein, Nickels, White, supra, § 6–79; *see also In re Allied Companies, Inc.*, 155 B.R. 739, 744 (Bankr.S.D.Ind.1992) (the avoiding of a transfer relates back to before the bankruptcy was filed, deeming the obligation unpaid as of the petition date). In our case, the customers received a preferential benefit via a payment to Aetna. By avoiding the payment, the transfer did not take place. Aetna was never paid and the customers may therefore remain liable.

8. If Aetna chooses to collect from the customers rather than filing a claim against Ausman's estate as a third party beneficiary of the agreement between Ausman and the customers, this court would not have jurisdiction. Such a proceeding would not be considered a core proceeding and therefore, in order for this court to have jurisdiction, it must have jurisdiction based upon 28 U.S.C. § 157(c). Jurisdiction under that provision is tied to the "relatedness" to the bankruptcy case. In this case, the dispute would be between two potential creditors of the debtor. No assets of the estate would be affected by its resolution. Under the Seventh Circuit's ruling in *In re Xonics*, 813 F.2d 127, 131 (7th Cir.1987), this court could not have jurisdiction as neither property of the estate is involved, nor would the dispute's resolution affect the recovery of another creditor. *See Matter of Kubly*, 818 F.2d 643, 645 (7th Cir.1987).