**In re Matthew S. DEARDORFF and Terri A. Deardorff, Debtors.**

**Matthew S. DEARDORFF and Terri S. Deardorff, Plaintiffs,**

v.

**FORD MOTOR CREDIT COMPANY, Defendant.**

**Bankruptcy No. 95–12152–7.
Adv. No. A95–1164–7.**

United States Bankruptcy Court,
W.D. Wisconsin.

April 10, 1996.

■■■■■■■■■■■■■■■■

---

L.R. Reinstra, Reinstra & Van Dyk, S.C., New Richmond, WI, for plaintiffs.

William R. Rettko, Quale, Feldbruegge, Calvelli, Thom & Croke, Milwaukee, WI, for defendant.

### MEMORANDUM OPINION, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

THOMAS S. UTSCHIG, Bankruptcy Judge.

The debtors filed this adversary proceeding against the defendant, Ford Motor Credit Company ("Ford"), to obtain the return of certain funds Ford received pursuant to a continuing wage garnishment. As the funds were taken from Mr. Deardorff's paycheck within the 90 days preceding the bankruptcy filing, the debtors contend that these withdrawals constitute preferential transfers under 11 U.S.C. § 547. The debtors have submitted a motion for summary judgment, and the parties agree that the resolution is a determination of law, rather than fact. The debtors are represented by L.R. Reinstra of Reinstra & Van Dyke, while Ford Motor Credit Company is represented by William R. Rettko of Quale, Feldbruegge, Calvelli, Thom & Croke, S.C.

The facts are simple and stipulated. On February 9, 1995, Ford filed an "Earnings Garnishment Summons and Complaint" in state court against Mr. Deardorff and his employer, SM & P Resource Utilities Company ("SM & P"). SM & P was served with the garnishment summons on February 15, 1995. Pursuant to the garnishment order, SM & P withheld the following sums from Mr. Deardorff's paycheck for Ford's benefit:

| | |
|---|---|
| April 7, 1995 | $169.33 |
| April 21, 1995 | $128.13 |
| May 5, 1995 | $177.55 |
| May 19, 1995 | $168.45 |
| June 2, 1995 | $170.83 |
| June 16, 1995 | $153.48 |

These payments total $967.77. On July 5, 1995, the debtors filed bankruptcy, and the garnishment payments to Ford ceased. The debtors then brought this adversary proceeding to collect the garnished funds, claiming

that these payments constituted preferences under 11 U.S.C. § 547.

■ Ford had initially raised concerns about the debtors' standing to bring this action, given that they had not claimed the funds as exempt and the trustee had not abandoned the estate's interest in them. However, these issues appear to have been resolved, as the trustee has abandoned the funds and the debtors have amended their exemption claims. The court must therefore examine the substance of the debtors' claim that the garnished funds constitute preferential transfers within the meaning of the bankruptcy code. Before they may avoid the garnishment as a preference, the debtors must demonstrate (i) that there was a transfer of the property of the debtor, (ii) to or for the benefit of a creditor, (iii) for or on account of an antecedent debt, (iv) while the debtor was insolvent, (v) within 90 days preceding the petition, and (vi) which permitted the creditor to obtain more than the creditor would have received in a chapter 7 distribution. *See* 11 U.S.C. § 547(b); *In re Ausman Jewelers,* 177 B.R. 282, 284 (Bankr.W.D.Wis. 1995); *see also Matter of Smith,* 966 F.2d 1527 (7th Cir.1992).

■ Ford concedes the presence of all but one of the requisite elements of § 547. The lone question is whether there was a "transfer" of the debtors' interest in the garnished funds within the 90 days prior to the bankruptcy filing.[1] Ford contends that the "transfer" occurred on February 15, 1995, when SM & P was served with the garnishment summons. If this argument is accepted, no transfer took place within the 90 days prior to the debtors' bankruptcy filing and there is nothing which could be avoided as a preference. In response, however, the debtors argue that the transfer could not occur until Mr. Deardorff became entitled to the wages. That could only happen when he earned them *during* the preference period. The result of the debtors' analysis, of course,

is to render the series of withdrawals from Mr. Deardorff's paycheck preferential.

Section 547 does offer a measure of statutory guidance on this issue. 11 U.S.C. § 547(e)(3) provides that "for the purposes of this section [§ 547 and the determination of preferential transfers] *a transfer is not made until the debtor has acquired rights in the property transferred.*" [Emphasis added]. Despite the presence of this statutory directive, a review of the reported cases indicates that courts across the nation have divided into two schools of thought. The first view is reflected by the "continuing lien" theory, under which the creditor's rights are fixed as of the date the garnishment summons is served. The remaining courts adhere to the "wage vesting" theory, under which an alleged transfer occurs only when the debtor actually becomes entitled to the wages in question. *See generally* Robert Weisberg, *Commercial Morality, the Merchant Character, and the History of the Voidable Preference,* 39 Stan.L.Rev. 3 (1986); Ilan Markus, Comment, *The Correct Application of Section 547(e)(3): Deciding Whether Wage Garnishment Transfers are Preferential,* 12 Bankr.Dev.J. 219 (1995).

It must be conceded at the outset that appellate court precedent favors the "continuing lien" theory, as all three courts of appeal which have considered the issue have followed this approach. For example, in *Riddervold v. Saratoga Hospital (In re Riddervold),* 647 F.2d 342 (2nd Cir.1981), the Second Circuit was faced with a debtor who sought to set aside certain garnishment payments made to a creditor within the preference period. In reaching its eventual holding, the *Riddervold* court first cited *In re Sims,* 176 F. 645, 647 (S.D.N.Y.1910), in which a garnishment order was held to operate as a "continuing levy" upon the garnished funds. Based upon this notion that the garnishment granted the creditor certain lien rights, the Second Circuit concluded that "the debtor has no property or interest in property subject to the levy which can be

---

1. The bankruptcy code's definition of a "transfer" is quite broad. In particular, 11 U.S.C. § 101(54) provides that:

"transfer" means every mode, direct or indirect, absolute or conditional, voluntary or in-

voluntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption.

transferred." *Riddervold,* 647 F.2d at 346. Once the court determined that the debtor had been stripped of any proprietary interest in the garnished funds from the moment the garnishment order was served, it logically followed that the transfer took place well outside the preference period. *Id.*

In *Askin Marine Co. v. Conner (In re Conner),* 733 F.2d 1560 (11th Cir.1984), the bankruptcy trustee sought to set aside garnishment payments made during the preference period. The court held that for purposes of § 547 a "transfer" is perfected when "a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee." *Id.* at 1562 (*quoting* 11 U.S.C. § 547(e)(1)(B)). Referring first to state law, the court noted that in Georgia a lien attaches to garnished funds upon service of the summons of garnishment. *Id.* As soon as those lien rights were created, no other creditor could obtain a judicial lien against the garnished funds superior to the interest of the garnishing creditor. Accordingly, the *Conner* court found that the "transfer" of the funds had been perfected outside the preference period. *Id.*

Finally, the Seventh Circuit itself has addressed the issue. In *In re Coppie,* 728 F.2d 951 (7th Cir.1984), the court held that the payments made under an Indiana garnishment order within the 90 days preceding the bankruptcy filing were not preferential transfers. The court found that under Indiana law, service of a garnishment order upon the debtor constituted a "novation" of the debtor's right to the portion of his future wages covered by the garnishment. *Id.* at 952–53. In holding that the creditor held a "continuing lien" on the debtor's future income which precluded avoidance of the payments as preferential transfers, the court stated:

> [T]he employers owed that portion of [the employees'] salaries directly to the garnishment plaintiffs and were liable to the plaintiffs for those amounts if the wages were not withheld pursuant to the court orders. True, the employers were not liable until the wages were actually earned, but once the court orders were entered the debtors were no longer legally entitled to 10% of their future salaries. Because the

court orders legally transferred 10% of the debtors' wages to the garnishment plaintiffs, there were no transfers at the time of the actual garnishments in question.

*Id.* at 953.

Of these three courts, only the Seventh Circuit addressed whether § 547(e)(3) could be applied to this situation. In rejecting the debtors' contention that the section required a finding that the transfer occurred when the wages were earned, the court took a narrow interpretation of the statute. The court held that the purpose of § 547(e)(3) was to overturn the result in *Grain Merchants of Indiana, Inc. v. Union Bank and Savings Co.,* 408 F.2d 209 (7th Cir.1969). In that case, the court held that rights acquired in accounts receivable within the preference period did not constitute a preference where the bank's security interest in after-acquired property was perfected more than four months before the bankruptcy filing. By enacting § 547(e)(3), Congress rendered such a transfer of an interest in "after-acquired property" a preferential transfer. 728 F.2d at 953.

The debtor in *Coppie* argued that if under § 547(e)(3) the attachment of a bank's lien to the debtor's after-acquired property was a preference, the same should hold true for a garnishment creditor's interest in the debtor's future wages. The *Coppie* court conceded that there were similarities between the wage garnishment payments and the "transfer" of after-acquired property at issue in *Coppie.* In both situations the creditor gained an interest in property which the debtor had no "right" to possess until the asset was acquired during the preference period. However, the court distinguished § 547(a)(3) and concluded that the wage garnishment payments were not preferences because "under Indiana law, the debtors retained no interest in 10% of their future wages following the entry of the garnishment orders." 728 F.2d at 953. Since the debtors "never" acquired an interest in the garnished wages, there was simply no "interest in property" transferred during the preference period. *Id.*

The reasoning of these cases has been routinely criticized. *See In re Taylor,* 151

B.R. 772, 776–77 (Bankr.N.D.Miss.1993); 4 *Collier on Bankruptcy* ¶ 547.16[7] at 547–90 (15th ed. 1992). Still, a few bankruptcy courts have followed this analysis and adopted the "continuing lien" theory. *See In re Hughson,* 74 B.R. 438 (Bankr.W.D.Va. 1987); *In re Ryder,* 59 B.R. 868 (Bankr. S.D.Fla.1986); *In re Yamamoto,* 21 B.R. 58 (Bankr.D.Haw.1982); *In re TMIC Industrial Cleaning,* 19 B.R. 397 (Bankr.W.D.Mo.1982). However, it appears that the majority view of bankruptcy courts across the country is that garnishment payments collected within the 90–day "window" of § 547 do in fact constitute preferential transfers. *See In re Polce,* 168 B.R. 580, 586 (Bankr.N.D.W.Va.1994); *In re Taylor,* 151 B.R. 772, 778 (Bankr. N.D.Miss.1993); *In re Lewis,* 116 B.R. 54, 55–56 (Bankr.D.Md.1990); *In re Krumpe,* 60 B.R. 575, 578–79 (Bankr.D.Md.1986); *In re Tabita,* 38 B.R. 511, 514–15 (Bankr.E.D.Pa. 1984); *In re Eggleston,* 19 B.R. 280, 284 (Bankr.M.D.Tenn.1982).

Most of the "wage vesting" courts have reasoned that a transfer of the debtor's wages cannot occur until the debtor earns them and thus becomes entitled to them. *See, e.g., Krumpe,* 60 B.R. at 578–79; *Tabita,* 38 B.R. at 514–15. Indeed, the most recent cases are quite emphatic about their rejection of the "continuing lien" theory. In *Taylor, supra,* the court held that under the "plain meaning" of § 547(e)(3), a debtor's wages simply cannot be transferred until they have been earned, notwithstanding the date the writ of garnishment was served. *Id.* at 777. Under the Supremacy Clause, Art. VI, Section 2 of the U.S. Constitution, a state's statutory determination of the time of transfer must yield to the "unequivocal language set forth in § 547(e)(3)." *Id.* at 778. The court stated:

> [t]hus, this Court is of the opinion that a cognizable transfer occurs when the employer withholds the statutory non-exempt percentage from the debtor's wages. *No transfer can logically occur until the debtor has, in fact, earned the wages.* [Emphasis added].

*Id.* Similarly, the court in *Polce, supra,* held that "the transfer cannot be deemed to have taken place until, *at the earliest,* [the] debtor

has lost his or her exemption rights under state law." 168 B.R. at 586. [Emphasis added].

Of course, the mere fact that *Coppie* and other proponents of the "continuing lien" school have received such a poor reception on a national scale does not alter this Court's obligation to adhere to Seventh Circuit precedent, if it is in fact applicable to this case. In this regard, the Court would note that the Seventh Circuit's recent decision in *In the Matter of Freedom Group, Inc.,* 50 F.3d 408 (7th Cir.1995), appears to cast some doubt on *Coppie*'s continued validity. The court's task in *Freedom Group* was to determine the timing of a one-time garnishment of a bank account. The court first stated that under the Supreme Court's decision in *Barnhill v. Johnson,* 503 U.S. 393, 397–98, 112 S.Ct. 1386, 1389, 118 L.Ed.2d 39 (1992), the issues of "whether and when a transfer occurs [are] issues of federal law." 50 F.3d at 410. The court further noted that:

> We are mindful of the flock of cases which … hold specifically that a transfer occurs within the meaning of the code when a notice of garnishment is served. [Cites omitted]. *All but one of these cases, however, were decided before the Supreme Court's decision in Barnhill v. Johnson, supra, and in our view do not survive that decision.* The issue in *Barnhill* was whether a transfer … occurred when the debtor delivered his check to the creditor or not until the bank on which the check was drawn honored the check; and the court held it was the latter, because "myriad events can intervene between delivery and presentment of the check that would result in the check being dishonored." [Cite omitted]. The same thing is true here. *Between the service of the notice of garnishment … and the final order of attachment … all sorts of events might intervene which would prevent the creditor from obtaining payment.*

50 F.3d at 412. [Emphasis added]. Among those cases which the Seventh Circuit indicated did not "survive" the decision in *Barnhill* was the Eleventh Circuit's decision in *Conner, supra.* As *Conner* involved facts

nearly identical to those in *Coppie,* one might debate *Coppie's* continued viability as well.

However, even presupposing that *Coppie* is still binding precedent, this Court recognized the decision's self-limiting nature in *In re Ballard,* 131 B.R. 97 (Bankr.W.D.Wis.1991).[2] The Seventh Circuit repeatedly stressed that its decision was based upon an interpretation of Indiana law, not the bankruptcy code. *See Ballard,* 131 B.R. at 102; *Coppie,* 728 F.2d at 953. Accordingly, there is no basis for mechanically applying the *Coppie* holding beyond the borders of Indiana unless the same conclusions may be made about Wisconsin garnishment law.[3]

In support of the "continuing lien" theory, Ford relies heavily upon *In re Woodman,* 8 B.R. 686 (Bankr.W.D.Wis.1981), a case which in fact involves garnishments issued under Wisconsin law. At least at first blush, *Woodman* appears squarely in accord with the decisions in *Riddervold, Conner,* and *Coppie. Woodman* involved six garnishments, four of which the creditor conceded were preferences as they were served within the 90–day period prior to the bankruptcy filing. However, the creditor claimed that the first two garnishments could not be avoided. The garnishment orders had been served outside the preference period, and with the exception of only a few days' pay had attached to wages the debtor earned outside that period as well. Nonetheless, the debtor argued that the funds were not "transferred" until the employer paid them over to the state court for distribution to the creditor. The *Wood-*

*man* court rejected this contention as lacking any authority. *Id.* at 687.

Given that all but a few dollars of the wages at issue in *Woodman* were earned outside the preference period, it does not appear that the debtor could not have prevailed even under the "wage vesting" theory, had it been adopted. Further, the case law existent at the time does not appear to have made a distinction between the "continuing lien" or "wage vesting" approaches to this issue. Accordingly, it is debatable whether *Woodman* is in fact a "continuing lien" case. However, the *Woodman* court did examine the rights obtained by a garnishment creditor under Wisconsin's garnishment laws. The court found that in Wisconsin a garnishing creditor receives an "equitable lien" upon the garnished funds as of the date the garnishment summons and complaint is served. 8 B.R. at 687; *see also Elliott v. Regan,* 274 Wis. 298, 79 N.W.2d 657 (1956). Under 11 U.S.C. § 547(e)(1)(B), a transfer is perfected "when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee." Therefore, because the garnishing creditor possesses "superior rights" upon service of the garnishment, the lien is established on that date. 8 B.R. at 687.

The *Woodman* court concluded that upon service of the garnishment, the creditor obtained a "perfected lien" and the debtor's employer "parted with 'an interest in property of the debtor.'" *Id.* at 688. As to the debtor's argument that the employer's subse-

---

2. In *Ballard,* this Court determined that an I.R.S. tax levy upon a debtor's wages was distinguishable from the court-ordered wage garnishment at issue in *Coppie,* and therefore constituted a preferential transfer. 131 B.R. at 106. Perhaps the most important factual distinction between the two situations was the absence of a court order establishing a continuing lien on the debtors' property in favor of the I.R.S. Rather, the use of a tax levy was an administrative procedure, thus sufficiently unlike the garnishments in *Coppie* to render that decision inapplicable. *Id.* at 102. Because of the Supreme Court's decision in *United States v. Nordic Village, Inc.,* 503 U.S. 30, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992), the Seventh Circuit subsequently reversed *Ballard* on unrelated grounds.

3. As one court stated when articulating its refusal to apply the "continuing lien" theory:

[if] it makes sense at all, the "continuing levy" concept offered in *Riddervold* and applied in *Coppie* operates only in a state which would recognize execution of the original writ of garnishment as accomplishing the complete end to the debtor's legal and equitable rights in future wages.

*Perry v. GMAC,* 48 B.R. 591, 596 (Bankr. M.D.Tenn.1985). Of course, if "when a transfer occurs" is truly an issue of federal law, it is unclear why the court should examine state law to determine the issue. *See Freedom Group,* 50 F.3d at 410. However, to the extent that there is any basis for the "continuing lien" concept, it is appropriate to examine the law of the particular state to determine whether the "continuing lien" or "wage vesting" theory should apply. *Polce,* 168 B.R. at 586.

quent payment of the funds into court somehow rendered the transfer voidable, the court stated:

> Those transfers by payments from the employer to the court may be avoided under 11 U.S.C. § 547 only if they involve "property of the debtor." Once the garnishee employer becomes liable to turn the property of the debtor over to the court, the transfer of the debtor's property was complete and [the debtor] no longer had a legal interest in the property.

*Id.* Although the court thus concluded that the "transfer" of the garnished wages was complete upon service of the garnishment summons, the court did recognize that the debtor retained an equitable interest in the funds based upon his right to defend the garnishment answer. *Id.* As will be seen shortly, these rights retained by the debtor impact significantly upon the outcome of this case.

Despite Ford's arguments to the contrary, *Woodman* does not control the outcome in the present case. In *Woodman,* the challenged transfers involved not only garnishment orders served outside the preference window, but wages earned outside that period as well. The schedule of garnishment payments made to the creditor reflects that with the exception of a few days' pay, the employee earned the wages more than 90 days before bankruptcy. 8 B.R. at 686. Given these circumstances, the debtor could not avoid the transfers under either theory. Accordingly, the statements made in *Woodman* about Wisconsin law appear to be dicta. Furthermore, although it did mention § 547(e)(1)(B), the *Woodman* court did not consider the impact of § 547(e)(3) upon Wisconsin garnishment law. Section 547(e)(3) specifies that a transfer is deemed to occur only at the point the debtor acquires rights to the property. This section controls the outcome of this case unless Wisconsin law clearly reflects that service of a garnishment summons constitutes a "novation" of the debtor's right to his future wages. *Polce,* 168 B.R. at 586; *Taylor,* 151 B.R. at 777–78;

*Perry,* 48 B.R. at 596; *see also Coppie,* 728 F.2d at 953 (§ 547(e)(3) inapplicable given the strictures of Indiana law).[4]

Other courts within the Seventh Circuit have declined to apply *Coppie* where the applicable state law does not mandate the type of "novation" apparently present in Indiana. For example, in *In re Weatherspoon,* 101 B.R. 533 (Bankr.N.D.Ill.1989), the court held that while a garnishment creditor in Illinois may receive certain lien rights, the debtor is not deprived of all interest in the wages because the creditor does not have an *unconditional* right to them. *Id.* at 537. Service of the summons "merely begins the process whereby the judgment creditor and judgment debtor assert their rights to the wages." *Id.; see also In re Johnson,* 53 B.R. 919, 924 (Bankr.N.D.Ill.1985).

Wisconsin law appears quite similar to the Illinois provisions at issue in *Weatherspoon.* Under Wis.Stat. § 812.01, service of a garnishment summons is merely the beginning of a process in which the creditor and the debtor may both assert their claims to the garnished wages. Ford points out that Wis. Stat. § 812.18(1) provides that the employer is liable to the garnishing creditor from the "time of service," and argues that as a result of this liability the debtor has no further claim to the funds. This section, however, establishes only the employer's obligation to pay; it does not impact either the debtor's right to claim an exemption or otherwise contest the garnishment. While service of the garnishment summons may make the employer liable for the garnished portion of the debtor's wages, or otherwise fix the creditor's priority over other creditors, it does nothing to satisfy the requirement of § 547(e)(3) that the debtor have acquired rights in the property transferred. *Lewis,* 116 B.R. at 55.

In this case, until the debtor performed the services necessary to earn his wages, he truly had nothing more than the *expectation* that he would receive them in the future.

---

**4.** As indicated previously, the Supreme Court's decision in *Barnhill v. Johnson* makes clear that "when a transfer occurs" is an issue of *federal law,* not state law. *Freedom Group,* 50 F.3d at

410. Thus, to the extent *Woodman* relies on state law in determining when the transfer occurred, it may have been overruled by implication. *Id.* at 412.

The debtor had no right to claim those funds until he earned them, and thus could not "transfer" them until that time. As this court recognized in *Ballard:*

> [to] hold otherwise would be creating in effect a legal fiction—in that the garnishor would be granted absolute rights in something not even in existence—future wages. There remains the possibility, moreover, that there never will be *any* wages to which the garnishor's levy would attach— since the debtor retains the right to choose to work or not to work.

131 B.R. at 104 n. 2. Although Ford's "equitable lien" was created as of the service of the garnishment summons, at that time there were no funds to which it could attach. Once the debtor earned the wages and gained the "right" to those funds, the lien attached. Under § 547(e)(3), the transfer occurred at that time as well.[5]

 Finally, this Court is quite cognizant of its role as a court of equity. *See, e.g., American United Mut. Life Ins. Co. v. Avon Park,* 311 U.S. 138, 145, 61 S.Ct. 157, 161, 85 L.Ed. 91 (1940), *citing with approval Securities and Exchange Comm'n v. United States Realty and Improvement Co.,* 310 U.S. 434, 455, 60 S.Ct. 1044, 1053, 84 L.Ed. 1293 (1940). In this regard, the underlying intent behind the bankruptcy code is to provide financial relief for overburdened debtors and to offer equitable treatment to creditors. *In re Derrick,* 190 B.R. 346, 351 (Bankr. W.D.Wis.1995). The purpose of preference actions under § 547 is to achieve the ratable distribution of the debtor's assets. *In re Sadler,* 935 F.2d 918, 921 (7th Cir.1991). While Ford may contend that it did not "race" to dismember these debtors' assets, it nonetheless received payments within the preference period which improved its position over that of other unsecured creditors.[6] Although avoidance of those payments will not achieve a distribution among creditors because the trustee has abandoned his interest in the funds and the debtors have claimed them as exempt, avoidance will possibly further the debtors' fresh start. Given the equitable considerations present in this case, the Court believes that the ultimate result is correct. Ford received preferential transfers totalling $967.77 pursuant to its wage garnishment, and those transfers must be avoided.

Accordingly, the debtors' motion for summary judgment is granted, and the preferential transfers, totalling $967.77 in garnished wages, are avoided pursuant to 11 U.S.C. § 547(b).

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

---

5. The Court would also note the conceptual difficulty a contrary holding would create. It appears that some courts have accepted as a matter of course that the bankruptcy filing would automatically eliminate the garnishing creditor's right to collect pursuant to the garnishment. *See Taylor,* 151 B.R. at 774–75. However, it is not clear that this would in fact be the case. Arguably, a strict interpretation of the "continuing lien" theory need not end at the courthouse door. If the debtor truly "never" acquires any right to the portion of his future wages covered by the garnishment, *see Coppie,* 728 F.2d at 953, even postpetition garnishments might be justified. *Ballard,* 131 B.R. at 104. Such a result is clearly at odds with the automatic stay provisions of 11 U.S.C. § 362 and the notion that the debtor should receive a "fresh start." The fact that the "continuing lien" theory is in stark conflict with such fundamental precepts of the bankruptcy code is further justification for its rejection. *Id.*

6. Indeed, Ford's position was enhanced solely by virtue of the garnishment. To adopt the "continuing lien" theory would permit Ford to improve its position within the preference period to the detriment of other creditors and without providing the debtor with anything of value to offset that enhancement. *Taylor,* 151 B.R. at 779.